HALES v. PETERS et al.

(Court of Civil Appeals of Texas. Dallas. Dec. 13, 1913. Rehearing Denied Jan. 3, 1914.)

1. APPEAL AND ERROR (§ 917*) — PRESUMPTIONS—DEMURRER—WAIVER.

Where the record does not show that any action was taken on a demurrer to the petition, it will be deemed to have been abandoned or· waived.

[Ed. Note.—For other cases, see Appeal and· Error, Cent. Dig. §§ 3706–3709; Dec. Dig. §· 917.*]

2. APPEAL AND ERROR (§§ 500, 713*)—RECORD· —REVIEW.

If the transcript contains no judgment or record entry showing a ruling on a demurrer to the petition, the ruling cannot be reviewed,. though such ruling be shown by a bill of exceptions reserved thereto.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298, 2379, 2463, 2645, 2956, 2957; Dec. Dig. §§ 500, 713.*]

3. HUSBAND AND WIFE (§ 276*)—COMMUNITY PROPERTY—QUALIFICATION OF ADMINISTRATOR—EFFECT.

The qualification of the husband, as community administrator, upon his wife's death did·

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes·

not divest the one-half interest in the community property which vested absolutely in the children, subject to payment of community debts.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. § 276.*]

4. HUSBAND AND WIFE (§ 276*)—COMMUNITY PROPERTY—RIGHTS IN PROCEEDINGS.

If property belonging to the community was sold by the husband, as community administrator, and the proceeds invested in other land, the children could claim the same interest in the land purchased as in the original community property, and were not bound to sue on the bond of the community administrator to obtain their rights.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. § 276.*]

5. HUSBAND AND WIFE (§ 276*)—COMMUNITY PROPERTY—ACTIONS—BURDEN OF PROOF.

In an action by children against one who purchased from the husband, as community administrator, land which was property of the community, agreeing, as part of the consideration, to pay the children the value of one-half of such land, the burden was on defendant to show that the community property was not more than sufficient to pay expenses of administration and community debts; the statute requiring the survivor to keep a correct account of the debts and expenses of administration.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. § 276.*]

6. HUSBAND AND WIFE (§ 276*)—COMMUNITY PROPERTY—ACTION TO RECOVER—SUFFICIENCY OF EVIDENCE.

In an action by the children on defendant's agreement, made upon purchasing from the community administrator land which was the property of the community, to pay the children the value of one-half of such land, evidence *held* to show that there was a surplus of the community property after payment of community debts and expenses of administration.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. § 276.*]

7. HUSBAND AND WIFE (§ 276*)—COMMUNITY PROPERTY — ACTIONS TO RECOVER — SUFFICIENCY OF EVIDENCE.

In an action on an alleged agreement by defendant, who purchased from the community administrator land which was the property of the community, to pay to the children, as part of the consideration, the value of one-half of such land, evidence *held* to show that defendant made the agreement alleged upon purchasing.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. § 276.*]

8. HUSBAND AND WIFE (§ 276*)—COMMUNITY PROPERTY—PURCHASE FROM ADMINISTRATOR—CONTRACT.

One who purchased land from the community administrator, knowing that the heirs claimed a half interest therein, and agreed to settle with them for their interest, in effect agreed, upon purchasing, to pay such heirs the reasonable value of their one-half interest in the land.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. § 276.*]

9. HUSBAND AND WIFE (§ 276*)—COMMUNITY PROPERTY—RIGHTS OF CHILDREN.

If one who purchased from the community administrator land which was the property of the community agreed to pay the children the

value of one-half of such community estate, the children could sue on such agreement without first seeking a partition and distribution of the community estate, or suing on the community bond.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. § 276.*]

10. TRIAL (§ 242*)—INSTRUCTIONS—MISLEADING.

In an action by five of eight heirs on an agreement, made by defendant upon purchasing from the community administrator land which was the property of the community, to pay the heirs the value of one-half of such community estate, the court instructed that, if defendant, when the conveyance was made, agreed with the community administrator that, as a part of the consideration, he would pay the children "the reasonable value of one-half of said land, then you will find for plaintiffs for five-eighths of whatever amount you may believe from the evidence was the reasonable value of said land" at the time of the sale to defendant. The evidence showed that plaintiffs were only claiming five-eighths of the value of one-half of the land sold to defendant. *Held*, that the instruction could not have misled the jury to believe that plaintiffs were entitled to recover five-eighths of the value of the entire tract; its reasonable meaning being that they were only entitled to five-eighths of the reasonable value of one-half of the land sold.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 569–576; Dec. Dig. § 242.*]

11. APPEAL AND ERROR (§ 1170*)—HARMLESS ERROR—INSTRUCTIONS.

Any misleading effect of such instruction was harmless where the paper on which the jury calculated their verdict showed that the amount awarded plaintiffs was only five-eighths of the value of one-half of the land sold to defendant, after deducting an incumbrance from the value of all of the land; Court of Civil Appeals rule 62a (149 S. W. x) prohibiting reversals for errors which were not reasonably calculated and probably did not cause the rendition of· an improper judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

12. VENDOR AND PURCHASER (§§ 249, 251*)—VENDOR'S LIEN—CREATION.

Unless expressly waived, a vendor's lien to secure the purchase price arises upon the sale of land, and, if a part of the price is the assumption of an indebtedness due a third person having no claim on the land, such lien arises in favor of such third person.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 624–635, 650; Dec. Dig. §§ 249, 251.

13. VENDOR AND PURCHASER (§ 284*)—VENDOR'S LIEN—JURY QUESTION.

Where circumstances were shown which would raise a vendor's lien to secure payment of the price of land, it was not necessary to submit to the jury the question of its existence; the lien being established by law.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 796–799; Dec. Dig. § 284.*]

14. HUSBAND AND WIFE (§ 276*)—COMMUNITY PROPERTY — ACTION BY HEIRS — NECESSARY PARTIES.

If defendant, upon purchasing from the community administrator land which was the property of the community, agreed to pay the children the value of one-half of such land, the children could either proceed against the community bond or against defendant on his agreement, and hence the other children were not

necessary parties to an action by a part of the children on defendant's agreement, since they could not be compelled to elect to sue on the agreement instead of on the bond.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. § 276.*]

**15. CONTRACTS (§ 9*)—CERTAINTY.**

A contract by defendant, upon purchasing land from the community administrator which was the property of the community, to pay the children the value of their interest in the community land so sold was not too uncertain to be enforced; the children's interest and the amount defendant agreed to pay being capable of being made certain by mathematical calculation.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 10–20; Dec. Dig. § 9.*]

**16. CONTRACTS (§ 187*)—ACTIONS—PARTIES—THIRD PERSONS.**

If defendant, upon purchasing from the community administrator land which was the property of the community, agreed, as part of the consideration, to pay to the children the value of one-half of the community estate, the children and hence their transferee could sue on such agreement to recover the reasonable value of their interest in the land; the agreement being an original undertaking which inured to the children's benefit.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 798–807; Dec. Dig. § 187.*]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by W. R. Peters and others against Ed Hales. From a judgment for plaintiffs, defendant appeals. Affirmed.

See, also, 144 S. W. 694.

L. L. Bowman and Yates, Sherrill & Starnes, all of Greenville, for appellant. Clark & Leddy, of Greenville, for appellees.

TALBOT, J. Appellees W. R. Peters and C. W. Bowman instituted this suit against the appellant, Ed Hales, and A. Lindsey, alleging in their original petition, among other things, in substance, that a short time prior to August 22, 1907, Emma Lindsey, wife of A. Lindsey, died, and at the time of her death she and her surviving husband owned community property of the aggregate value of $2,545, of which $1,800 was real estate, and the balance personal property; that on said date the defendant A. Lindsey was duly appointed community administrator of said estate, and executed and filed his bond as such administrator in the county court of Hunt county; that on the same day said defendant Lindsey filed an inventory and appraisement of said property belonging to said estate, showing the aggregate value above named; that, after said inventory and bond were filed and duly approved by the county court of Hunt county, said A. Lindsey was duly authorized by said court to handle, manage, control, sell and dispose of said property in the manner authorized by the statutes of Texas relating to community administration; that thereafter the said A. Lindsey sold the land belonging to the community and a large amount of the other property shown by the inventory, and invested the proceeds thereof, or a part of the proceeds thereof, in other lands, which were thereafter, to wit, on the 22d day of October, 1909, sold to the defendant Ed Hales; that before the sale of said property to the said Hales more than a year had elapsed since the taking out of community administration on said estate; that the said A. Lindsey and his deceased wife left surviving them eight children, all minors at the time A. Lindsey qualified as community administrator, but four of whom had become of age at the time of the trial of this suit; that, at the time the sale of the land was made to Ed Hales, the said Hales, in purchasing said land, agreed to pay to the children of A. Lindsey and Emma Lindsey what the said Hales and A. Lindsey agreed was the value of one-half of said property, amounting to the sum of $600, of which sum one-half would belong to the children who had reached their majority, and the said A. Lindsey is indebted to the four children above named for the value of one-fourth of said community estate; that, although said children had demanded of said Lindsey a settlement of their part of said estate, no part of the amount due them has ever been paid, and that the defendant Hales refused to recognize any liability to either of said children or the plaintiffs herein, and has refused to pay them any sum whatever; that plaintiffs are the owners by purchase and transfer in due and legal form from said four adult children of all their rights, title, and interest in and to said land and any property belonging to said community estate. Defendant Hales filed general and special demurrers to plaintiffs' petition, and a general denial of the allegations thereof, except that part of the same which shows that A. Lindsey had duly and legally qualified as community administrator of said estate, and that A. Lindsey, joined by his second wife, had sold and conveyed the tracts of land described in plaintiffs' petition to defendant Ed Hales. Defendant's general demurrer to plaintiffs' petition was presented and sustained. Plaintiffs declined to amend, and their case was dismissed. They appealed, and the judgment of the lower court was reversed, and the cause remanded. See 144 S. W. 694. When the case came up for trial again in the district court, as between the plaintiffs and the defendant Hales, the controversy as between plaintiffs and the defendant Lindsey having been theretofore disposed of by judgment of the court, plaintiffs filed what is styled their first trial amendment, and alleged, in substance, that since the filing of their original petition they had purchased and were "the owners of the amount due Paralee, another child of said A. Lindsey," and were the owners "of her interest" in said land and in said purchase money, making them now the owners of five-eighths interest therein instead of one-half as hereto-

fore alleged"; that, instead of the sum of $600, as alleged in plaintiffs' original petition, the defendant Hales agreed and promised to pay the said children named in said petition the reasonable value of their interest in said land, which was understood between the parties to be the sum of $900; that, as a part of the consideration of said sale of the land described in plaintiffs' petition, it was specially understood and agreed by and between the said Lindsey and Hales at the time thereof that the said Hales was to settle with said children for their interest in said land, and was to pay them the reasonable value of one-half of said land, and that by reason of said agreement a lien exists against said land for the amount due said children. Plaintiffs asked judgment for $900, and that a lien for same be fixed upon the land bought by defendant Hales. In reply to plaintiffs' "trial amendment," defendant Hales filed a supplemental answer, alleging that said amendment was insufficient in law to authorize any foreclosure against the land alleged to have been sold to him by A. Lindsey, or to authorize the establishment or finding or fixing of any lien against said land. Defendant Hales also denied all the allegations in said amendment. A trial before the court and a jury resulted in a verdict and judgment in favor of the plaintiffs for the sum of $675.78, and, defendant Hales' motion for a new trial being overruled, he appealed.

[1, 2] Appellant's first assignment of error is that the court erred in overruling his general demurrer to plaintiffs' petition. The record fails to show that such or any action was taken by the court on said demurrer, and the same must be deemed to have been abandoned or waived. Chambers v. Miller, 9 Tex. 236; Headley v. Obenchain, 33 Tex. 682; Knights v. Rose, 62 Tex. 322; Whitmire v. Farmers' Nat. Bank, 97 S. W. 512. It is further held that, if the transcript contains no judgment or record entry showing the court's ruling on a demurrer, the ruling cannot be revised, even though it be disclosed by a bill of exception reserved thereto. Daniel v. Daniel, 128 S. W. 469, in which a writ of error was denied by the Supreme Court. There is a judgment in the record showing that appellant's *special exceptions* were overruled, but none showing any action whatever with respect to his general demurrer. It seems, however, that the questions sought to be presented for decision under this assignment are raised by assignments of error hereinafter to be considered. We may also add that on the former appeal, to which we have referred, it was held that even appellees' original petition, which was subsequently strengthened by amendment, was not obnoxious to a general demurrer. In so holding, the court declared, in effect, that where, as a part of the consideration for the conveyance of a tract of land, the purchaser promises, as was alleged to have been done in this case, to pay a debt due by the grantor to a third person, he is bound by such promise, and a petition so alleging presents a cause of action.

The court instructed the jury in the first paragraph of the general charge as follows: "At the time of the execution of the first deed introduced in evidence, viz., October 22, 1909, the legal title to the land therein described was in A. Lindsey, and he had a right to convey it. However, his children by his first wife, five of whom have assigned their claims to plaintiffs, would have been entitled to a portion of the proceeds of a sale of said land upon a settlement of the community estate of A. Lindsey and his said deceased wife, the mother of said children." The latter clause of this charge is complained of, and made the basis of appellant's third assignment of error. It is said the charge is erroneous, because (1) the rights of the children referred to therein were governed by the conditions of the community bond shown to have been filed by A. Lindsey after the death of the mother of said children, according to the value of the community estate on hand at the time of the mother's death and the indebtedness against such community, without regard to the value of the land sold by A. Lindsey to defendant Hales; (2) the charge assumes there was a surplus of the community estate of Lindsey and his deceased wife after their community debts and the expenses of administration had been paid, without any evidence to support it; and (3), when the survivor of the community has legally qualified as community administrator, and the order of the county judge approving the inventory, appraisement, list of claims, and bond has been recorded as required by law, the rights of the heirs are protected by such bond, and they are not entitled to claim any part of the proceeds of the sale of the community estate, unless such heirs demand a partition and distribution thereof in the manner provided by article 3612, Revised Statutes of Texas. The record before us fails to disclose any pleading or evidence concerning the community debts, if any, of A. Lindsey and his deceased wife, or the expenses incurred by the said A. Lindsey, as community administrator, in administering the community estate of himself and wife. Nor does it appear that their children, under whom appellees claim, ever demanded a partition of the community estate in the manner provided by statute. This being the state of the record, should it be held that the charge in question was materially erroneous, and the plaintiffs not entitled to recover? We think not.

[3] Upon the death of Mrs. Lindsey a one-half interest in the community property of herself and her husband, A. Lindsey, vested absolutely in their children, subject, of course, to the payment of community debts.

Such interest did not cease to exist by the qualification of A. Lindsey as survivor, and he did not thereby become the unqualified owner of the same. By qualifying as survivor, A. Lindsey acquired the right to manage and control the community estate; "but the title of the children was not thereby divested." Faris v. Simpson, 30 Tex. Civ. App. 103, 69 S. W. 1029. As held in Faris v. Simpson, supra, after the lapse of one year they were entitled, under the statutes, to have the estate partitioned and distributed, and this could not be done if the property belonged to their father, A. Lindsey. If Lindsey, by qualifying as survivor, became the owner, in his own right, of all the community property of himself and deceased wife, then as a matter of course there could be no community property to be distributed between him and his children.

[4] The sale of the community land on hand at the time Mrs. Lindsey died, and the use of the proceeds thereof by the survivor in purchasing the lands sold by him to appellant, was not a conversion, in the sense that the children were thereby limited to an action on his bond. When such proceeds were invested in the land sold to appellant, said land took the place of the land from the sale of which such proceeds were derived, and became, in equity, community property of A. Lindsey and his deceased wife, and their children had the right to claim the benefit of such investment and their interest therein, which was the same as in the original tract, without resorting to the community bond. Worst v. Sgitcovich, 46 S. W. 72.

[5] But appellant contends that it devolved upon appellees to allege and prove, before it can be said they had an interest in the land purchased by appellant and entitled to recover, if at all, on the ground that appellant agreed, as a part of the consideration for said purchase, to pay the children of A. Lindsey and his deceased wife, the reasonable value of one-half of said land, that there was more than sufficient community property belonging to said estate to satisfy the expenses of the administration and pay the community debts. To this contention, we do not agree. It was not essential to appellees' right of recovery to allege and prove said facts. The burden was upon appellant to do so. It seems clear, as argued by counsel for appellees, that, had these children been suing A. Lindsey himself, and had Lindsey been claiming the right to reduce their interest in the property, or sought to defeat a recovery altogether, on account of the appropriation of the community property to the payment of community debts and expenses of administration, it would have been incumbent upon him to allege and prove the facts necessary to sustain such a defense, and appellant, having purchased from Lindsey, and having assumed Lindsey's obligation to settle with the children for their interest in the community es-

tate, is in no better position than Lindsey himself would have been had the suit been brought against him as suggested. The statute makes it the duty of the survivor to keep a correct account of the debts and expenses paid by him as the community administrator. Such debts and expenses are peculiarly within his knowledge, and the rule requiring him to allege and prove the same before he will be allowed to defeat an action by the heirs to recover their interest in the community property, on the ground that such property has been by him applied to the payment of community debts and expenses of administration, is a proper, just, and fair one, and this rule should apply to a purchaser under him, where such purchaser has expressly agreed, as a part of the consideration of his purchase, to settle with the heirs for their interest.

[6] But, although there were no direct allegations or proof of the community indebtedness and expenses of administration, the inference is clear from the terms of the contract sued on that both A. Lindsey and appellant recognized and admitted the interest claimed by the children in the community estate, and that such interest had not been divested by the sale of the community property to pay community debts. Besides, appellees did allege that the tract of land involved in this controversy constituted substantially all of the property belonging to the community estate of A. Lindsey and his deceased wife that *still remained,* and that each of them had demanded of A. Lindsey their part of the same, that said Lindsey was insolvent, and that they had elected to ratify the purchase of said land by him with the proceeds derived from the sale of the land on hand at the time of Mrs. Lindsey's death, and to accept their proportional part thereof in lieu of their proportional part of said proceeds; and it was agreed, as shown by the record, by and between the appellees and appellant that the "allegations with reference to the community property are substantially correct;" and it was admitted that the allegations in the pleadings relative to the community administration were true. And, further, A. Lindsey testified that the land sold by him to appellant was purchased with the proceeds of a tract of land belonging to the community of himself and deceased wife, and that "the children claimed their mother's interest in the place, one-half of it." He further testified: "These children have never been settled with for their share of the community. It was community property, and they are entitled to their mother's part. The Shelby county land was acquired during the lifetime of the mother of the children. I sold that property, and with the proceeds bought this land. I sold to Mr. Hales, and the children are entitled to a half interest of that." It follows that, in our opinion, the objections to the clause of the court's charge

under consideration are not well taken, and that the assignment of error under which they are urged should be overruled.

The court instructed the jury in the second paragraph of the main charge thus: "Now, if you believe from a preponderance of the evidence that at the time of said conveyance defendant E. D. Hales promised and agreed with said Lindsey that, as a part of the consideration of said conveyance, he would pay to said children of A. Lindsey by his first wife the reasonable value of one-half of said land, then you will find for plaintiffs for five-eighths of whatever amount you may believe from the evidence was the reasonable value of said land at the time of the trade between defendant E. D. Hales and A. Lindsey." This charge is assigned as error, and the contention made (1) that there was no evidence tending to show that the appellant, Hales, agreed with A. Lindsey that, as a part of the consideration of the conveyance of the land sold him, he would pay Lindsey's children the reasonable value of one-half of said land; (2) that, where the heirs of the community do not avail themselves of the statute providing for the partition and distribution of the community property, but elect to pursue their remedy under the bond, the measure of damages is determined by the bond of the survivor, and is one-half of the excess of the proceeds of the community property, after payment of community debts and expenses of administration; (3) that, if the measure of the rights of the heirs of A. Lindsey and his deceased wife is to be determined solely by the value of the land in question, then appellees, who claim to own the interest of only five of the eight children, would be entitled to no more than five-eighths of the reasonable value of one-half of said land, less the indebtedness against it at the time, and not five-eighths of the value of the whole of said land, as charged by the court.

[7, 8] The evidence supports the allegations that appellant agreed with A. Lindsey, as a part of the consideration for the land sold him, to pay the children of the said Lindsey by his first wife, the reasonable value of one-half of said land. A. Lindsey testified: "I sold the Shelby county school land, and bought this piece of land that I sold to Mr. Hales. When I sold him this land, he was to pay the children. He (Hales) was to pool the place, and assume the loan, and he was to give me one-half of what he pooled it for for my interest, and he was to settle with the heirs. The children claimed their mother's interest in the place, one-half of it. These children have never been settled with for their share of the property. It was community property, and they are entitled to their mother's part. The Shelby county land was acquired during the lifetime of the mother of these children. I sold that property, and with the proceeds bought this land I sold to Mr. Hales, and the children are entitled to a half interest in that." W. R.

Peters testified: "It is my understanding that $1,750 was to be borrowed on the land and paid to Lindsey and his children. * * * I know that Lindsey told me that as far as that went he would settle with the heirs; that they would be satisfied; that the heirs would be settled with." W. A. Gibbs testified: "Mr. Hales said he was to pay the heirs. He did not say what he would pay them. He said he would settle with the heirs, if he got the place. It was my understanding that Mr. Hales was to pay the heirs." Mr. Hales himself testified: "I knew before I made the last trade that the children were claiming a half interest in the property, and that they had put the matter in the hands of Mr. Byrd." Cleve Lindsey testified as follows: "I only had one conversation with Mr. Hales prior to the sale of the place. That was at Royce. He just said that, if he got the place, he would settle with the heirs. I signed a deed one day at Gaddo Mills conveying the property to Mr. Hales. I was looking to Ed Hales to pay me until he refused to do so. He only offered to settle with the heirs one time. I believe he said that the heirs (interest) were worth $75. I do not remember when that was." B. J. Anthony testified: "I had a little conversation with the defendant Ed Hales in Gaddo Mills, after he secured a deed from A. Lindsey for this property. After he got the deed he came over to Mr. Basser's lumber yard, where I was, and said, 'Me and Mr. Lindsey have traded for the land, and I have got the deed in my pocket, and the damned heirs can get their part the best way they can.'" Mrs. Flora Lindsey stated: "Mr. Hales said he would pay us $798 for Mr. Lindsey's interest, and he would pay the heirs." This and other evidence in the case, notwithstanding the testimony of the appellant to the contrary, well supports the proposition that appellant agreed to pay, as a part of the consideration for the land in question, the heirs for their interest therein, and that such interest was understood to be and should be measured by the reasonable value of one-half of said land seems clear. Appellant having purchased the land from A. Lindsey, knowing that the heirs were claiming a half interest in it, and having agreed, as found by the jury, and supported by the evidence, to settle with them for their interest therein, the same constituted in law an agreement to pay them the reasonable value of one-half of said land.

[9] A sufficient answer to the second proposition contended for by appellant is that this suit is one to recover upon an express agreement made by a purchaser of community property to pay the heirs for their interest in the same, and not a suit on the bond of the community survivor. The heirs, under the circumstances of this case, were not compelled to pursue the remedy afforded them by the bond. The contract made by appellant and A. Lindsey could be sued on, as was

done, and allegations and proof showing that an effort had been made by the heirs by suit to have a partition and distribution of the community estate were not essential to the right to maintain such suit. This is also an answer to appellant's second assignment of error, complaining that the court erred in overruling his special exception No. 2 to plaintiffs' petition; the contention being that the right of the survivor of a community estate to control and dispose of the same, after qualifying under the statute, continues until partition is sought and made as provided by law, and that, until there is such partition, the heirs must look to the community bond for the protection of their rights and interests in the estate. It is held, in Huppman v. Schmidt, 65 Tex. 586, that "the survivor may settle with the heirs, without the aid of any court," and, as said by counsel for appellees, there is nothing in the law to prohibit him from arranging for such settlement in selling a part of the community property or property acquired with the proceeds thereof, especially where, as here, the heirs are demanding a settlement in accordance with an arrangement made therefor by the survivor, and more than a year has elapsed since the survivor qualified.

[10] Referring to the third proposition of appellant, stated above, it may be said that, while the charge we are here considering is not entirely accurate, yet, when fairly considered, it was not calculated to mislead the jury to the prejudice of appellant. Construed in connection with the pleadings and the undisputed evidence, which showed that appellees were only claiming five-eighths of the value of one-half of the land sold to appellant, it is not at all probable that the jury were misled by the use of the language, "five-eighths of the reasonable value of said land," and thereby caused to believe that the measure of appellees' damages was five-eighths of the value of the entire tract of land. Besides, as will be observed, the paragraph of the charge in question makes appellees' right to recover depend upon the alleged fact that appellant "promised and agreed with said Lindsey that, as a part of the consideration of said conveyance, he would pay to said children * * * the reasonable value of one-half of said land, and it is evident, we think, when the entire paragraph is looked to, that the court meant, and that the jury must have so understood by the language, "you will find for plaintiffs for five-eighths of whatever amount you may believe * * * was the reasonable value of *said land*," five-eighths of the reasonable value of one-half of the land. Any jury of average intelligence, we think, would have so construed and understood the charge, and it must be assumed that the jurors trying this case were men of at least such intelligence.

[11] However this may be, it is clear to our minds that, if the charge is subject to the criticism urged against it, the error there-in is not of such a character as "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case," and, if it was not of such a character, the error furnishes no ground for a reversal. Rule 62a (149 S. W. x). But it was made to appear, in a contest of appellant's motion for a new trial in the district court, by an affidavit of one of the jurors who sat in the trial of the case, and by other testimony, that the jury were not, in fact, misled by the charge. It is argued, however, that the affidavit of the juror was improperly allowed to show that the alleged error in the court's charge did not mislead the jury in arriving at the amount of their verdict. Whether this contention is or is not correct, we need not decide. The fact that the jury was not misled by the charge is shown by undisputed evidence independently of the affidavit of the juror. It appears that upon the contest of appellant's motion for a new trial appellees produced before the court the identical piece of paper upon which the jury made the calculation resulting in the amount of the verdict found. This paper, with the figures made thereon by the jury, was left in the jury room, and was immediately thereafter discovered by a deputy sheriff, and preserved. It was identified by the foreman of the jury and the deputy sheriff, and annexed as an exhibit to the written contest of the motion for a new trial. The result of the calculation referred to, as shown by these figures, corresponds exactly with the amount of the verdict rendered, and it is evident that the amount of damages awarded appellees is only five-eighths of the value of one-half of the land sold appellant, after deducting from the total value of said land, as found by the jury, an incumbrance thereon, about which there was no dispute.

The fifth assignment of error is that the court erred in refusing to give a special charge requested by appellant directing the jury to return a verdict in his favor. It is sufficient to say that, if this assignment has not been disposed of against appellant by what we have already said, the evidence was amply sufficient to take the case to the jury, and the special charge was properly overruled.

It is next assigned that the court erred in its decree fixing a lien upon the land, and in foreclosing the same, and directing that an order of sale issue commanding the sale of the land, because (1) the verdict of the jury did not find in favor of a lien and its foreclosure; (2) there was no evidence introduced showing an express agreement between appellant, Hales, and A. Lindsey that a vendor's lien should exist in favor of Lindsey's children on the land sold appellant, and there was no such agreement expressed in the deed; (3) in order to create a vendor's lien on land, there must be a debt for unpaid purchase money to a fixed amount, payable

at a certain time, in a certain manner, and payable as purchase money; (4) where an implied vendor's lien is sought to be fixed on land, such lien cannot be decreed, unless the verdict finds that the amount due is due as a payment for the land claimed, and shows the amount of the debt and the existence of the lien; (5) it is error for the court to decree a foreclosure of an implied vendor's lien on land, and direct a sale thereof, when the pleadings and the evidence, as in the instant case, show there are minors equally entitled with the judgment creditor to the benefits of said lien, and such minors are not parties to the suit. We think neither of these contentions should be sustained.

[12] It is settled law that a vendor's lien arises by operation of law, and exists in the sale of land to secure the payment of the purchase money, unless expressly waived (Briscoe v. Bronaugh, 1 Tex. 330, 46 Am. Dec. 108; Cecil v. Henry, 93 S. W. 216; Springman v. Hawkins, 52 Tex. Civ. App. 249, 113 S. W. 966), and, where a part of the purchase money for a tract of land is the assumption of an indebtedness due to a third party who has no claim on the land, the vendor's lien arises in favor of such third party to secure such indebtedness (Thomas v. Morrison, 46 S. W. 46; Joiner v. Perkins, 59 Tex. 300; 29 Am. & Eng. Ency. Law, p. 49). That the vendor may not know that the law gives such lien, or does not contract therefor, does not alter the case. The appellees claimed, and the jury found upon evidence justifying the conclusion, that, in purchasing the land involved in this suit, appellant promised to pay to the children of A. Lindsey what he and the said Lindsey agreed was the value of the one-half of said land as a part of the purchase money thereof, and upon this promise and agreement the right of appellees as the transferees or assignees of this claim is based.

[13] Upon such sale, purchase, and agreement, the vendor's lien arose by operation of law, as it does generally in other conveyances of land, and, the lien being given by law, there was no occasion or necessity of submitting the question of its existence and the right to have it foreclosed to the jury. In Railway Co. v. Henderson, 86 Tex. 307, 24 S. W. 381, it is said: "When the issues submitted to a jury embrace only such claim or claims as by law are given a lien upon property, it is not necessary to submit the question of lien to the jury, because, in finding that the plaintiff is entitled to recover on such claim or claims for any amount, the jury determines that a lien exists, which will be declared by the court as a matter of law, and upon a general verdict a decree of foreclosure should be entered by the court. Day v. Cross, 59 Tex. 608; Pearce v. Bell, 21 Tex. 691; Jones v. Ford, 60 Tex. 131; Railway v. James, 73 Tex. 18 [10 S. W. 744, 15 Am. St. Rep. 743]." The argument advanced in support of this holding of the Supreme Court is that: "If the court were to submit to the jury the question as to the existence of lien, it would necessarily be in the form of an instruction to the effect that, if they found the plaintiff entitled to recover, they would find a lien for the amount so found on the property in question, which would be the declaration of the court that a lien attaches to such claim by law, and the jury would not exercise any discretion upon the subject submitted. It would simply be the declaration of the law by the court before verdict, instead of upon the verdict." The case, it seems to us, is easily distinguished from the case of Ablowich v. National Bank, 95 Tex. 429, 67 S. W. 79, 881. There suit was brought upon a note, and to foreclose a mortgage alleged to have been given upon land to secure its payment. Whether the mortgage lien existed was a material issue in the case, which was submitted to the jury, and, the verdict of the jury having failed to declare its existence and foreclosure, the judgment of the court doing so was held not to be sustained by the verdict, and therefore erroneous. In so ruling, the Supreme Court declared that, "when a jury has been demanded by either party, he is entitled to have every material issue made by the pleading and the evidence submitted to that jury, and the trial court cannot enter judgment upon a verdict which fails to pass upon any material issue submitted to the jury, unless it be in case of a special verdict, which is provided for by statute." There was no such issue with respect to the lien declared upon and foreclosed in the present case. Here the lien was given by the law, and, as held in Railway Co. v. Henderson, supra, which was not overruled by the Ablowich Case, and which has not been overruled by any decision in this state that we are aware of, was not an issue of fact to be submitted to and passed upon by the jury.

[14] Upon the proposition that the pleadings and evidence show the want of necessary parties, to wit, the three minor children of A. Lindsey and his deceased wife, it may be said that these children were doubtless proper parties, but not necessary parties. Unlike the case which appellant seems to rely on, the interest of the children under whom appellees claim and said minor children was not joint. Their interests are separate and distinct, and they were not therefore necessary parties to this suit. Furthermore, it seems pretty clear that the minors could not be forced into this suit, and have their rights concluded by the judgment therein. They unquestionably have the option to proceed against the community bond executed by A. Lindsey or against the appellant, and we are not prepared to say they could be compelled to elect, because appellees did so, and brought into this suit, to proceed against the appellant.

[15] The eighth and last assignment of error asserts that the court erred in overruling appellant's amended motion for a new trial "because the verdict of the jury was contrary to the law and the evidence, in that the evidence fails to. show a specific agreement on the part of appellant to pay the children of Lindsey and his deceased wife any specific amount, or at any specific time, or in any specific manner." We are of opinion that this assignment should be overruled. The interest of the heirs was an equitable one-half interest in the property; that of the five under whom appellees claim five-eighths of the value of one-half thereof. Appellant assumed the obligation of A. Lindsey to account for and pay the children's interest, and the evidence shows the reasonable value of the land he acquired from Lindsey in consideration of this assumption. And appellant having failed to allege and prove facts that would reduce the claim of the children below one-half of the community property, the law would write into the transaction an obligation or promise to pay the five children five-eighths of the reasonable cash market value of one-half of the land, upon demand, or within a reasonable time. At any rate, the contract sued upon in this suit was not incapable of enforcement because of any uncertainty in its terms. The interest of the children and amount appellant promised to pay was capable of being rendered certain by a mere mathematical calculation.

[16] A careful consideration of the briefs and record has led us to the conclusion that no reversible error has been pointed out, and that the case should be affirmed. Appellees' cause of action is grounded upon the promise and agreement of appellant to pay for A. Lindsey, as a part of the consideration for the land deeded to him, the value of the interest of the children of said Lindsey in the community estate of himself and wife. This being an original undertaking based upon a valuable consideration, was a binding obligation which inured to the benefit of said children, and, said children having sold and transferred their claim to appellees, an action could be maintained by them to recover therefor. Peters v. Lindsey, 144 S. W. 694.

The verdict and judgment were authorized by the pleadings and evidence, and, no error warranting a reversal of the case being disclosed, the judgment is affirmed.