### MARYLAND CASUALTY CO. v. FARMERS' STATE BANK & TRUST CO. et al. (No. 38.)

(Court of Civil Appeals of Texas. Waco. Jan. 24, 1924. Motion for Rehearing Withdrawn, Feb. 21, 1924.)

**1. Appeal and error ⬅500(2)—Record must show action taken on pleas in abatement.**

Contention that court erred in overruling pleas in abatement cannot be considered on appeal where the record fails to show that any action was taken on the pleas.

**2. Banks and banking ⬅63½—Pleas in abatement in action on fidelity bond held without merit.**

In an action by a bank against surety of cashier, wherein the commissioner of banking upon the bank's insolvency became a party plaintiff jointly with the bank, pleas in abatement to effect that the bank was not a necessary party after it became insolvent and the commissioner of banking had taken same over, and that the commissioner could not maintain a suit because the law only authorized the suit to be brought by a bonded agent or commissioner appointed by the commissioner of banking, *held* without merit.

**3. Appeal and error ⬅500(2)—Special exceptions not properly presented for review.**

It cannot be contended on appeal that the court erred in overruling special exceptions, where record does not show that trial court acted on the exceptions.

**4. Insurance ⬅430 — "Embezzlement"; "wrongful abstraction" and "willful misapplication" in indemnity contract, defined.**

A bond indemnifying a bank employing a cashier against embezzlement, wrongful abstraction and willful misapplication of funds, relates to three different acts, "embezzlement" being a breach of trust or duty with respect to moneys, properties, or effects in the possession of the party and entrusted to him by another, and the appropriation of such moneys, properties or effects, or a part thereof, to the use of the party so intrusted, and is a criminal offense, while "abstracting" the funds of the bank is to take and withdraw from the possession and control of the bank its moneys, funds or credits, and may be done under the

color of loans, discounts or checks, and "wilful misapplication" covers a misapplication willfully and unlawfully made with intent to injure the bank, and the funds so misapplied must be converted to the use of the person making the misapplication, or to the use of some other person than the bank.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Embezzle—Embezzlement; Willful Misapplication—Willfully Misapply.]

**5. Insurance ⬅430—Cashier of bank held to have unlawfully "abstracted" from and willfully "misapplied" money of bank.**

A cashier who induced friends to make notes to bank with the promise that he would pay them when they became due, and placed the notes in the bank and used the money for his individual purposes, unlawfully abstracted from and willfully misapplied the money of the bank within the meaning of a bond of indemnity, though the loans were reported to the directors of the bank who approved the same without knowledge that the cashier obtained the money.

**6. Insurance ⬅264(2)—Bank held not to have made warranties with reference to bank's affairs as basis for bond of cashier.**

Representations as basis for bond of cashier, with reference to size of bank, and duties of cashier and his salary, and the number of employees used in the bank, did not constitute warranties that the business of the bank would not be increased with an incident increase of salary of the cashier, and the number of employees in the bank.

**7. Insurance ⬅622(2)—Limitation of actions ⬅24(2)—Contract held in contravention of statute prohibiting contract limiting action to shorter period than two years; four years' statute held applicable.**

Bank cashier's bond indemnifying bank against embezzlement, etc., containing a provision that suit must be brought and service had on the surety within two years after a loss occurred, was in contravention of Rev. St. 1911, art. 5713, providing that it shall be unlawful to make a contract by reason whereof the time to sue thereon is limited to a shorter period than two years, and the four years' statute of limitations applied.

**8. Insurance ⬅658—Evidence as to statements of cashier to persons signing notes held admissible.**

In an action on bond of cashier of bank wherein it was alleged that cashier obtained money by inducing friends to sign notes payable to the bank with the promise of the cashier that he would pay them when they became due, the cashier himself receiving the money from the bank, testimony of parties who signed various notes with reference to what the cashier told them at the time the notes were signed, to the effect that they were signing the notes simply as an accommodation for the cashier to enable him to get money from the bank, was admissible.

**9. Insurance ⬅508½—Cashier's bond and renewals held to permit only recovery of face of bond.**

Bank cashier's bond for $5,000, and two renewals thereof, did not render indemnitor liable for more than $5,000, the original bond providing that it could be renewed from year to year by paying the renewal premium, and the renewals providing specifically that indemnitor should never be liable for more than $5,000 on the original and renewal bond.

Appeal from Seventy-Fourth District Court, McLennan County; H. M. Richey, Judge.

Suit by the Farmers' State Bank & Trust Company against the Maryland Casualty Company. The bank becoming insolvent, the Commissioner of Banking also became a party plaintiff. Judgment for plaintiffs, and defendant appeals, and plaintiffs assign error. Affirmed.

Taylor & Hale, of Waco, for appellant.
Sam R. Scott, of Waco, for appellees.

BARCUS, J. The Farmers' State Bank & Trust Company of Gorman, herein designated "bank," filed this suit against appellant on January 23, 1922. Thereafter the bank became insolvent and was taken in charge for liquidation by Mr. Hall, commissioner of banking of Texas, who was succeeded by J. L. Chapman, who made himself a party plaintiff, and the suit was prosecuted jointly by the bank and J. L. Chapman, commissioner of banking.

Appellees alleged that W. D. Morrel became cashier of said bank April 16, 1919, and made and executed a bond in the sum of $5,000 with appellant as surety, and that said bond was renewed for two additional years. Appellees claimed that by reason of the terms of the renewal for each of the two years, appellant became liable to the extent of $5,000 for each of the three years, a total of $15,000. The bond provides that appellant will pay the bank for all loss occasioned by the embezzlement, wrongful abstraction or willful misapplication of any of the bank's funds by Morrel, not to exceed $5,000; it being the statutory bond required under article 574 of the statutes.

Appellees alleged that after said bond was executed Morrel illegally obtained from the bank about $18,000 by the following methods in substance: He would go to his friends and tell them that he (Morrel) needed some money and have different ones of his friends give their note, payable to the bank, with the promise on the part of Morrel that he would pay the notes when they became due. Morrel would place the notes in the bank and use the money. The individuals signing the notes never received the money, it being passed directly to the credit of Morrel in the bank, or taken by him and used for

his individual purposes. These notes with interest were renewed from time to time. The original loans, as well as the renewals, were reported to the directors of the bank, who approved same, but no official of the bank except Morrel knew of the arrangement between Morrel and the signers of the notes, and did not know that the money was being borrowed for Morrel individually at any time prior to June, 1921. Appellees alleged that during May, 1921, Morrel, by making a false entry in the bank books, withdrew from the bank $2,159 which he used for his own benefit.

On May 31, 1921, Morrel committed suicide and when the books and notes were checked, the information as to the circumstances under which the notes were executed and the money taken were then revealed. When Morrel died, his estate was insolvent, and the parties who had signed the notes were insolvent.

The pleadings are voluminous, but the above states in substance the contention of appellees.

Appellant answered first by pleas in abatement to the effect that the bank was not a necessary party after it became insolvent, and the commissioner of banking had taken same over, and that J. L. Chapman as commissioner of banking could not maintain the suit because the law only authorized the suit to be brought by a bonded agent or commissioner appointed by the commissioner of banking.

Appellant alleged that it was not liable because it was not notified within 90 days after loss occurred, and because suit was not brought within two years after said loss, if any, occurred, and because of some false warranties made by the bank at the time the bond was signed, and because of the negligence of the officers of the bank in not keeping check on its cashier, and because at the time the different loans were made the parties to whom the loans were made were perfectly solvent.

The cause was tried before the court, which resulted in a judgment for appellees for the full penal sum of the bond, $5,000.

Appellees have filed a motion to strike out appellant's brief, because same does not comply with the rules for briefing. While the brief does not comply strictly in all details with the new rules, we think it is in the main sufficient, and overrule appellees' motion.

Appellant presents its assignments of error under five groups:

[1, 2] (1) That the court erred in overruling its pleas in abatement. The record fails to show that such or any action was taken on the pleas in abatement. Said matters are not properly presented in this court. Hales v. Peters (Tex. Civ. App.) 162 S. W. 386; Gardner v. Goodner Wholesale Grocery Co. (Tex. Civ. App.) 247 S. W. 291; Finklea v. Bank (Tex. Civ. App.) 247 S. W. 320. We have, however, examined the pleas in abatement as shown by the defendant's answer, and do not think they should have been sustained.

[3] (2) Appellant contends that the court erred in overruling its special exceptions and that there is no evidence to support the judgment of the trial court. The record does not show that the trial court acted on the special exceptions and said matters are not properly presented in this court. Hales v. Peters, supra. We have examined the exceptions, and same should have been overruled.

The trial court filed its findings of fact and conclusions of law. The facts show that Morrel, as cashier of the bank, for the purpose of obtaining money from the bank for his own use and benefit, claimed to have made loans to some of his friends, who signed notes payable to the bank, with the promise on the part of Morrel that he (Morrel) would pay the notes when due and that Morrel took the money from the bank, the parties signing the notes never having used the money or had any connection therewith. Appellant's contention is that, since Morrel placed in the bank, at the time he took the money, notes signed by persons who at the time were solvent, it was not an embezzlement or wrongful abstraction or willful misapplication of the bank's money.

[4, 5] The bond provides for indemnity against three different kinds of acts, embezzlement, wrongful abstraction, and willful misapplication of the funds, and there is a difference in the three acts. Embezzlement is a breach of trust or duty with respect to moneys, properties, or effects in the possession of the party and intrusted to him by another, and the appropriation of such moneys, properties, or effects, or a part thereof, to the use of the party so intrusted, and it is under our statutes a criminal offense. To abstract does not involve the same trust relation. It means to "take from" or "withdraw," so that to abstract moneys from the bank is to take and withdraw from the possession and control of the bank its moneys, funds, or credits. Abstracting the funds of the bank may be done under the color of loans, discounts, or checks. The means used would be immaterial if the result is the wrongful abstraction of money from the bank without its actual knowledge and consent and converting the same to the use and benefit of the abstractor. Willful misapplication as described in the statutes means a misapplication, willfully and unlawfully made by one or more of the officers of the bank, of the money, funds, or credits of the bank, and done with intent to injure the bank, and the funds so misapplied must be converted to the use of the officer or officers making such misapplication or to the use of some other person than the bank. In this

case we do not think there can be any question but that Morrel unlawfully abstracted from and willfully misapplied the money of the bank. He and his friends entered into a joint scheme whereby Morrel obtained possession of more than $16,000 of the bank's money by use of deception. Morrel claimed to the directors that the money was being loaned to the respective parties whose names were signed to the notes, when in truth and in fact the money was being loaned to Morrel by himself and used by him for his individual purposes. The pleadings and evidence are sufficient to sustain the judgment. U. S. v. Breese (C. C.) 173 Fed. 402; U. S. v. Northway, 120 U. S. 327, 7 Sup. Ct. 580, 30 L. Ed. 664; Southern Surety Co. v. Citizens' State Bank of Hempstead (Tex. Civ. App.) 212 S. W. 556; National Surety Co. v. Murphy-Walker Co. (Tex. Civ. App.) 174 S. W. 997; Ferguson v. State, 80 Tex. Cr. R. 383, 189 S. W. 271.

[6] (3) Appellant contends that appellees were not entitled to recover, because when the original bond was executed the president of the bank made certain warranties with reference to the bank's affairs as a basis for the bond being issued, when in truth and in fact said representations were false. The representations were made April 26, 1919, and had reference to the size of the bank and the duties of Morrel and his salary and the number of employees used in the bank. Appellant does not claim that the representations when made were false, but claims that after the bond was given the bank's deposits and loans were materially increased and that Morrel's salary was increased to $300 per month and several new men were added to the bank's force. The application was not made a part of the bond. Nothing is contained in the application or the bond to the effect that the conditions as to the volume of business to be done by the bank, or the employees to be used, or the amount of salary to be paid, would not be changed in the future; and no evidence was offered tending to show that any of the changed conditions would have in any manner influenced appellant in making the bond or that same were in any way material to the risk.

(4) Appellant contends that no notice of the loss was given within 90 days after it was discovered, and that the suit was not brought within 2 years after the loss, if any, occurred, and that the claim is therefore barred. The original bond provides in one paragraph that appellant shall be notified of any loss within 90 days after same is discovered, and then in another paragraph that no suit or action shall be brought on the bond unless commenced and the process served on the company within the term of two years next after the date of any loss. The renewal certificates were issued for the years 1919 to 1920 to 1921, and each of the renewals provides that—

"The liability of the Maryland Casualty Company as surety for the employee to the employer shall not exceed the amount above written ($5,000.00) whether the loss shall occur during the term of the bond above named, or during any continuation or continuations thereof, or partly during said term and partly during any continuation or continuations thereof."

The trial court found that by reason of Morrel's unlawful actions during the first year, April 16, 1919, to April 16, 1920, the bank suffered a pecuniary loss in the total sum of $16,880, and that during the period from April, 1920, to April, 1921, it suffered a loss of $2,650; that neither the bank nor the state commissioner of banking knew of said losses until in June, 1921, the notes taken in 1919 by Morrel having been renewed from time to time until he died in May, 1921, when the true conditions were ascertained. Appellees gave appellant notice of the loss within 90 days after same was discovered.

[7] Article 5713 of the Revised Statutes provides that—

"It shall be unlawful" to make a contract "by reason whereof the time in which to sue thereon is limited to a shorter period than two years."

This bond containing a provision that suit must be brought and service had on the appellant within two years after the loss occurs, is in contravention of said statute. Texas & Pacific Ry. Co. v. Langbehn (Tex. Civ. App.) 158 S. W. 244; Fire Ass'n of Philadelphia v. Richards (Tex. Civ. App.) 179 S. W. 926; Taber v. Western Union Telegraph Co., 104 Tex. 272, 137 S. W. 106, 34 L. R. A. (N. S.) 185.

The suit being on a written contract is governed by the four-year statute of limitation, and the plea of limitation was properly overruled.

[8] (5) Appellant contends that the testimony of the parties who signed the various notes with reference to what Morrel told them at the time the notes were signed, to the effect that they were signing the notes simply as an accommodation for Morrel to enable him to get money from the bank, was not admissible. We think there was no error in the court admitting this testimony. Wilmurth v. Tompkins, 22 Tex. Civ. App. 87, 53 S. W. 833.

We have examined all the assignments presented by appellant, and do not think they show reversible error.

[9] Appellees by counter assignments of error claim that the court erred in not rendering judgment for appellees for the total sum of $15,000, or at least for the sum of $5,000 for the loss which occurred during 1919–20, and $2,650 for the loss which occurred during the year 1920–21, contending that each renewal of the bond was for an additional $5,000 and that at the time of Morrel's death appellant was under bond to pay the

bank $15,000 if it had sustained that much loss. We do not agree to this construction of the bond and its renewals. The original bond given provides that it can be renewed from year to year by paying the renewal premium, and the renewals provide specifically that appellant shall never be liable for more than $5,000 on the original and renewal bond. The parties made the contract limiting their liability to $5,000, and there is no evidence in the record which would authorize the court in holding appellant liable for more than said amount.

There being no reversible error in the record, the judgment of the trial court is affirmed.