CHARLES H. JORDAN'S EXECUTORS, &c., v. J. C. IMTHURN ET AL.

1. COMMUNITY PROPERTY—SURVIVOR.—That the bond executed by the surviving husband does not equal in amount the community property left at his wife's death, does not affect his right of control, &c., over community property, given by article 33 of the act of August 15, 1870, to the survivor on filing inventory and bond.

2. SAME.—The giving of the bond by the survivor and its approval by the clerk is in the nature of a judicial proceeding, which should not be held void in a collateral proceeding.

3. SAME—SURVIVOR MAY INCUMBER.—The right to dispose of. includes the right to incumber community property. A deed of trust made by the survivor upon community property, after bond and inventory, held valid against the heirs, &c.

4. HOMESTEAD—ABANDONMENT.—A surviving husband, after bond and inventory, incumbered by deed of trust the homestead to raise money for his business; subsequently, the husband did not actually occupy the premises with his family: Held, As against his children by a subsequent marriage, such trust deed held the homestead.

5. BURDEN OF PROOF.—A deed of trust upon property executed by a surviving husband upon community property in his possession, is prima-facie valid, and the burden of proof would lie upon any one attacking it as invalid, from its conflict with homestead rights, to show, by affirmative allegation and proof, that at the time of the execution of such trust deed the property was a subsisting homestead.

APPEAL from Galveston. Tried below before the Hon. T. N. Waul, special judge.

J. C. Imthurn & Co., lien creditors of Charles H. Jordan, deceased, brought this action against the executors of Charles · H. Jordan, deceased, F. Lammers and August Buttlar, and Mathilde Jordan, surviving wife of said Jordan, a native

and resident of the empire of Germany, and Frederick and Charles Jordan, minor children of said Charles H. Jordan by his first wife, Caroline Ernestine Jordan, also deceased, at present and since the year 1871 residing with their relatives in Germany, (both of which minors were born in the State of Texas,) seeking a foreclosure of a lien against lots 8, 9, 10, and 11, in block number 435, in the city of Galveston, the homestead of Charles H. Jordan and Caroline E. Jordan, deceased, father and mother of the minor defendants, by virtue of a deed of trust executed by Charles H. Jordan after the death of his wife, Caroline Ernestine Jordan, under and by virtue of a qualification as survivor in community under the probate act of August 15, 1870.

The opinion of the special judge states the case with sufficient carefulness, and is given, as follows:

"This suit was instituted to foreclose a mortgage, with powers of sale, executed by C. H. Jordan on June 5, 1873, upon lots 8, 9, 10, and 11, in block 435, in the city of Galveston, to secure plaintiffs in the amount of $16,900, payable on May 1, 1875, with interest thereafter at 8 per cent. per annum.

"The pleadings and evidence show various payments made by the executors, and that the amount now due is $11,640. It is also shown that the lots were bought by Jordan in 1859, after his marriage with Caroline Ernestine, at a price within the limit allowed by the Constitution, upon which to erect and establish a homestead; that the purchase was made with that intention, and carried out by building a commodious residence thereon in 1868, in which his wife, the two minors the offspring of the marriage, and himself resided, until she died, on the 1st of January, 1871, leaving surviving her the two infants, aged respectively about four and two years.

"In June, 1871, Jordan qualified as survivor of the community by inventory and appraisement and by giving bond, with security, in the sum of $81,219, the estimated value of the community estate, conditioned according to law; whereupon he took charge of and controlled the community estate.

"That afterwards he removed his children to Germany, to be there reared and educated under the guidance and care of their relatives, and that they still continue to reside in Germany.

"That shortly after the removal of his children he rented the homestead, and it has from that time been occupied by tenants.

"That subsequent to the removal of the children and the renting of the homestead, Jordan executed the trust deed in controversy to secure a liability originating in a commercial transaction after the death of his wife, and with which the community was in no manner connected.

"That about this time Jordan's health became seriously impaired; that he made lengthened visits to Europe, and closed up his commercial business in Galveston; that when in the city, after his first visit, he occupied a room in his former home. On his later returns, he occupied a room fitted up in his former commercial building, on Mechanic street.

"Before his last voyage to Europe he seemed despondent, and stated he would return if his health was restored; but that he would not return to Galveston until after the recovery of his health. Whilst in Europe, in 1874, he intermarried with Mathilde Kuester, who then and still resides in Germany and has never been in the State of Texas. That Jordan died in Baden-Baden, in 1875, on the 27th day of April.

"It is further shown that the community estate of Jordan and wife (Caroline Ernestine) and the separate estate of Jordan are insolvent, and that all the property conveyed by the trust deed to plaintiff, save the lots in controversy, has been sold to satisfy older liens, and the balance of the estate left by Jordan exhausted in the due course of administration. It was also proved that real estate had diminished in value very greatly since 1873; that the homestead in controversy was valued by Jordan at $17,000, and that he refused an offer of $15,000 for it; that now $7,000 would be a high estimate, and that it would hardly bring that price.

"1. Upon these facts, the defendants urge, that inasmuch as the property belonged to the community of C. H. and C. E. Jordan, it should be first subject to the community.

"2. That upon the death of Caroline Ernestine, in 1871, her share in the community became at once vested in her surviving children, and liable only for the debts of the community.

"3. That the lots in controversy constituted the homestead of C. H. Jordan and family during the life of his wife Caroline. After her death, the homestead continued in himself and children until his death, and is now the home of the children, or of the surviving family, and, therefore, cannot be sold by decree of this court, as such sale would be a forced sale.

"4. That at the death of their mother, the minors inherited or became invested with an interest as in fee in the homestead, which could not be divested by their father; or, admitting this power to sell absolutely, it could not be incumbered by mortgage or other lien.

"5. That Mathilde Kuester, the widow of Jordan, is entitled to the property, she being legally the head of the family; and, therefore, it cannot be subjected to a sale under the trust deed.

"6. That property and assets of the estate should be administered by the executors, as directed by the will of C. H. Jordan.

"The community estate, by the laws of Texas, has always been placed under the control and management of the surviving spouse. This was not only the course of the civil law, but has been recognized and adopted in most systems of jurisprudence as the most equitable method of settling all partnerships after a dissolution by death or otherwise.

"The surviving husband, under our law, is liable not only to the full extent of the community estate, but personally in his individual estate, and in any manner he might dispose of his separate estate he might use the community property in

the settlement of his debts, he being, of course, personally liable to the parties entitled as heirs or creditors for any misapplication of the assets beyond the amount necessary to settle the community liabilities. Owing to a want of knowledge or adaptation to a system of marital partnership not in consonance with the experience of our heterogeneous population, estates were loosely managed, accounts not kept, responsibilities incurred, and the titles of purchasers of community property rendered uncertain or worthless.

"This uncertainty continued under our course of legislation to a greater or less extent until 1870, when the Legislature, on August 15 of that year, passed the act by which the survivor of the community, in addition to the inventory and appraisement before that time necessary, when, upon giving bond, 'the husband continues to have the same power of disposition over the community property which he possessed during the continuance of the marriage.'

"The bond required being for the full value of the community, was intended by its terms for the protection of the creditors as well as the heirs or others entitled, and is, to some extent, a substitute for the property; and as the husband, during the existence of the community, has the right to sell, mortgage, manage, or dispose of the community property for his individual or a community debt, the mortgagee, or *cestui que trust* for whose benefit the community property was pledged to secure the individual debt of the husband, has a preference over any unsecured creditor of the community upon the property mortgaged; and so Jordan, as survivor, having full power at the date of the trust deed to execute it, it became effectual, according to its terms, to secure the plaintiffs against any claim of the creditors of the community or the minor children of Caroline Ernestine claiming any rights to the property as community.

"Upon the claim of defendants—minors and Mathilde Kuester, the surviving wife—to the property as the property of their homestead, testimony has been introduced to estab-

lish an abandonment by Jordan of his domicil and residence in Galveston. I do not deem the testimony sufficient to prove that fact; the evidence of an abandonment of one's home and country, which is involved in the actions and expressions of Jordan, should be very definite and explicit. No length of absence in pursuit of health is sufficient to fix such intention, and it is the safest to adhere to the recognized rule, that until a new domicil is acquired *facto et animo,* the old one is retained, and therefore that Jordan died in January a citizen of Texas, with his domicil at Galveston.

"The retention of a homestead cannot fairly be tested by the same rules. The abandonment of one's country involves a violation of sentiment, a yielding of patriotism, and an abdication of political fraternity. The disposing of one's residence—his homestead—may be a matter of taste, convenience, or profit.

"A person apparently in easy circumstances, as was Mr. Jordan previous to and at the execution of the trust deed; his wife dead; his children sent abroad to be reared up and educated and too young for companionship or the hope, within any reasonable time, to be united in a family with their father in Galveston; his health broken down; his mercantile interest terminated; his time mostly spent in Europe in pursuit of health; without the pecuniary necessity of retaining the homestead; no use for it as a home or shelter or refuge for his family,—it would require no great weight of argument to infer the intention of abandonment from the facts exhibited in evidence. He had a right to dispose of the premises as he might dispose of any other portion of his real estate, and, as the head of the family, his children would be bound by his actions. He had a right to abandon the premises, did abandon them, and whilst the house was occupied by tenants, his children abroad, and he only temporarily present, he conveyed the premises by mortgage to plaintiffs; and certainly they should not be made losers by depending upon the deed in trust from Jordan and the necessary implicit assurance

that he was authorized to make it; nor can we draw an in-
ference, so unfavorable to his good name, that the conveyance
was a fraud, and that he harbored a secret intention of claim-
ing the property as his homestead.  Were Jordan now living
and the instrument a simple mortgage, he could not resist
the foreclosure, and being dead, the defendants are bound
by his acts.

"This mortgage having been executed before his marriage
with Mathilde Kuester,—coupled with the facts that she still
resides in Germany, has never visited Texas or made appli-
cation for any right of homestead, and no claim to the prop-
erty set up for her, except as appears from her answers in
this case,—it is therefore concluded that she has no right, as
against the plaintiffs, available in this suit.

"The directions of the will, if in conflict with the contract
of the testator and plaintiffs, of course would be inoperative,
as the testator had no power by the terms of the will to alter
in any particular the terms of his contract, nor have his rep-
presentatives.

"There are other interesting questions raised and argued
by counsel on either side, but, from the conclusions formed,
it has not been considered necessary to discuss them.

"Judgment and decree will be entered for the plaintiffs
according to the prayer of the petition; the costs of the suit
and an allowance of $100 to H. W. Rhodes, Esq., to be paid
out of the proceeds of the sale."

From this decree the defendants appealed.

*Edward T. Austin*, for appellants.

I.  "The property reserved from forced sale by the Consti-
tution and laws of this State, or its value if there be no such
property, does not form any part of the estate of a deceased
person where a constituent of the family survives."

For property exempt, see section 1 of chapter 76 of the
Laws of 1870; Probate Act of 1870, sec. 26; Constitution
of 1869, art. 12, sec. 15.

II. To establish the abandonment of a homestead to subject it to claims of creditors, there must be clear proof of the intention. (Cross v. Everts, 28 Tex., 533; Mills v. Van Boskirk, 32 Tex., 360; Shepherd v. Cassiday, 20 Tex., 29; Gouhenant v. Cockrell, 20 Tex., 97, 98; Westbrooke v. Jeffers, 33 Tex., 88, 89; Taylor v. Boulware, 17 Tex., 77.)

III. The court erred in its ruling, that by the qualification of C. H. Jordan as survivor of the marital community of himself and Caroline Ernestine Jordan he took such title to the homestead property of that community as divested the title of the children of the marriage in the mother's estate in said community, and that a mortgage made by him on said homestead property after his wife's decease to secure his individual debt might be foreclosed, and the property sold for the satisfaction of such debt after the decease of said Jordan.

The power of sale contained in the mortgage was revoked by the death of Jordan, and the trustees therein named could not enforce the mortgage under the power; and the creditor coming into court to enforce the power, the court has no authority to order the sale of the homestead property, as such sale would be a forced sale. (Sampson v. Williamson, 6 Tex., 110; Stewart v. Mackey, 16 Tex., 58; Hamblin v. Warnecke, 31 Tex., 91, 92; Westbrooke v. Jeffers, 33 Tex., 88, 89.)

IV. By the qualification of Jordan as survivor, he took the right to manage, control, and dispose of the community property subject to account to the children of the marriage surviving for one-half of the surplus after paying the then existing community debts; and, in the exercise of this right, he could sell and convey any realty, including the homestead, the bond securing the children against loss. As he did not sell the realty, and the same remained in the estate, the right of the children in the community and their right to the exempt property remained intact, free from the claims of creditors. The existing homestead was not chargeable with debt. (Laws of 1870, ch. 81, secs. 27, 33; Laws of 1873,

amended ch. 97; Reeves *v.* Petty, 44 Tex., 249; Sossaman *v.* Powell, 21 Tex., 665; Willis *v.* Matthews, 46 Tex., 479; McLane *v.* Paschal, 47 Tex., 365; Carter *v.* Randolph, 47 Tex., 376.)

*Henry W. Rhodes,* special guardian of the minors.

I. It will be seen, upon inspection of the record, that the bond executed by Jordan was only for $81,219, while the inventory of community property filed by him amounts to $117,000. The statute was not complied with. The defect was patent upon the record. Appellees are charged with notice of the defect. The power to sell or incumber the property was not conferred by these imperfect proceedings. (Probate Act of 1870, secs. 33, 127; Cordier *v.* Cage, 44 Tex., 532.)

II. The property sought to be subjected to sale under the deed of trust in favor of plaintiffs was the homestead of Jordan and wife at the death of the wife. The homestead rights of the two children in the property were disregarded by the court in its decree. There was no abandonment worked by absence. (Const. of 1869, art. 12, sec. 15; Probate Act of 1870, sec. 33; Sabriego *v.* White, 30 Tex., 584; Cross *v.* Everts, 28 Tex., 523; Cox *v.* Shropshire, 25 Tex., 115; Gouhenant *v.* Cockrell, 20 Tex., 98; Franklin *v.* Coffee, 18 Tex., 417; Taylor *v.* Boulware, 17 Tex., 77; Shepherd *v.* Cassiday, 20 Tex., 29; Somerville *v.* Somerville, 5 Ves. Jr., 787.)

III. The court erred in its conclusions and in the distinction drawn as to the abandonment of the homestead, as contradistinguished to an abandonment by Jordan of Galveston as a place of residence, the proof fully satisfying the court that Charles H. Jordan had neither abandoned his citizenship nor his residence in Galveston, the facts being that he had acquired no other homestead, either in Texas or elsewhere. I understand our law of homestead exemption to attach exclusively to our own citizens. It is not for the protection of foreigners or non-residents; but how it can be contended,

logically, that a citizen of Texas and a resident of Galveston, from a temporary renting of the homestead of his family, and from having sent his little children where they could have the nurture which their tender years made so necessary to them, and which they would receive only from those closely allied to them by blood, has abandoned his homestead rights, and thereby destroys those of the appellants in this cause, I am again at a loss to conjecture. I unhesitatingly say, that the law to support this as a proposition is not to be found in the books, and it is directly in the teeth of Gouhenant *v.* Cockrell, 20 Tex., 98, and Henderson *v.* Ford, 46 Tex., 628.

IV. The facts adduced at the trial showed that Charles H. Jordan sought to subject the property in controversy, the homestead of himself and children, to the payment of his individual debts to appellees, plaintiffs below; that the instrument declared on as a deed of trust was executed by Charles H. Jordan after the death of the mother of appellants; that satisfaction of the debt due appellees by Jordan had not been had in full, either during the lifetime of Jordan or since his decease, by his executors; that a balance of over $11,000 was due thereon when this case was tried in the court below; that Charles H. Jordan's estate and the community estate of Charles H. and Caroline E. Jordan, deceased, are both insolvent. Still the court held that the mortgage was good as against the homestead interests of my wards and the property subject to forced sale. I contend that this, in the light of the judicial history of the law of homestead exemption, as interpreted by this court heretofore, in a doctrinal point of view, is all wrong and in utter disregard of the recent case of Reeves *v.* Petty, 44 Tex., 249, and authorities there cited. (Sossaman *v.* Powell, 21 Tex., 665; O'Docherty *v.* McGloin, 25 Tex., 67; James *v.* Thompson, 14 Tex., 466; Lockhart *v.* White, 18 Tex., 108; Runnels *v.* Runnels, 27 Tex., 515; Robertson *v.* Paul, 16 Tex., 474.)

*Robert G. Street,* for appellees.

BONNER, ASSOCIATE JUSTICE.—In this case, a jury was waived, and the special judge presiding below placed upon the record the reasons upon which he based his judgment. If this practice were more general, it would in many cases save both counsel and the revising court the delay and trouble of an examination over points upon which, had they been thus shown, perhaps there would have been no further contest.

It is shown by the statement of facts that the debt sought to have been secured by the trust deed originated in a commercial transaction entered into by the surviving husband, Charles H. Jordan, after the death of the first wife, Caroline E. Jordan, and who was the mother of the two minor defendants, Charles and Frederika Jordan, and with which transaction the community estate was in no way concerned.

The validity of the trust deed must depend upon the power of the surviving husband to incumber the property in controversy, considered (1) as community property and (2) as the late homestead of himself and his deceased wife.

We will first dispose of the question of his power to incumber it, considered simply as community property.

Charles H. Jordan, as surviving husband, sought to qualify as such under section 33, act of August 15, 1870, prescribing the mode of proceeding in the District Courts in matters of probate, (Paschal's Dig., art. 5494,) and which reads as follows: "Where the wife dies, her husband surviving, administration is unnecessary, except as to any separate estate which may have belonged to her. The husband continues to have the same power of disposition over the community property which he possessed during the continuance of marriage. But he shall be required to return an inventory and appraisement of all such property, and to file a bond, signed by one or more sureties, to be approved by and payable to the district clerk of the county, in an amount equal to the value of the whole of the community property, to the effect that he will faithfully administer the same and pay over one-half of the surplus after the payment of the debts with which the whole

is properly chargeable, to such person or persons as shall be entitled to receive it."

It is contended by counsel representing the minor children, that the qualification of Charles H. Jordan under this section was invalid, first, because the appraisement was not sworn to; second, because the bond was in the sum of $81,219 only, when the community property was appraised at $117,000, and hence was not for the amount required by statute.

The statement of facts does not show the first objection to have been well taken. The deficit in the bond seems to have been for the estimated amount of the community indebtedness.

It was an irregularity to have taken a bond for an amount less than the appraised value of the property, but, in our opinion, not sufficient, under the circumstances, to have rendered the proceedings void. The giving of the bond by the surviving husband and its approval by the clerk, was in the nature of a judicial proceeding, which should not be held void on a collateral attack. It seems to have been given and accepted in good faith; to have been acted upon and acquiesced in by all parties interested; and no direct proceedings taken to avoid it and have a new or additional one given. The creditors are not complaining, and are not parties directly to the controversy. Although their interests are nominally represented by the executors of Charles H. Jordan, yet these executors themselves contend that the property was the homestead, and hence not subject to the payment of debts. The heirs could only claim an interest in the residuum of the property after the payment of the community indebtedness, and even if the estate had not proved insolvent, the bond was intended and was sufficient in amount to secure their interests.

The power of general disposition over the community, given by statute, would contain the lesser power to incumber it; and we do not think that there was error in so much of the judgment below as held the deed of trust valid to the extent to incumber the community property as such.

II. Was the deed of trust sufficient under the circumstances to incumber the property, it having been the homestead of Charles H. Jordan at the time of the death of the first wife, Caroline E. Jordan, as against the homestead claims of her minor children and of the second wife, Mathilde Kuester?

The determination of this issue in the court below was made to depend upon a question of fact, the subsequent abandonment or not of the property as a homestead, by the surviving husband, prior to the execution of the deed.

Many of the decisions of this court by which great strictness of testimony has been required to show an abandonment of the homestead, as that of Shepherd *v.* Cassiday, 20 Tex., 24, were cases where an existing creditor sought, as against the wife, to subject the homestead to execution, or, as in the case of Gouhenant *v.* Cockrell, 20 Tex., 96, where it was thus sought as against the husband, who had temporarily left it in the legitimate pursuit of his avocation. In these cases, the homestead was claimed to have been abandoned simply by reason of absence, without affirmative act by conveyance or incumbrance. It could not have been contended in these instances that, under the exemption laws, the debts for which the homestead was sought to be made liable had been contracted with reference to it as a means for payment; and in such cases it was very properly required that the testimony should show a clear intention of abandonment. But neither upon principle nor policy should the same degree of strictness be required in a case like the one before the court, where the surviving husband had qualified as such for the purpose of the control and disposition of the property, and then, by an affirmative, express act of his own, incumbered it, and perhaps thus induced credit to have been given him which would not otherwise have been extended.

As against the minor children, such qualification, under a similar statute, gave the father the right to sell the homestead. (Dawson *v.* Holt, 44 Tex., 174.)

As against the wife, although in a proper case a previous

power to sell without her consent might be revoked by the marriage, (Henderson *v.* Ford, 46 Tex., 627,) yet if, in fact, before the marriage, the property had been abandoned as a homestead, and had been sold or incumbered, the subsequent marriage would not render the transaction invalid.

The deed of trust was, *prima facie*, a valid incumbrance upon the property, and it devolved upon the defendants to show, by affirmative allegation and proof, that at the time of its execution the property was a subsisting homestead, rather than upon the plaintiffs to allege and prove, by way of confession and avoidance, that it had been then abandoned as such. The court having found that it was thus abandoned, we cannot say, under the evidence, that the judgment on this issue was erroneous. It is not sufficient that the judgment does not clearly appear to be right, but it must clearly appear to be wrong, to authorize us to set it aside. (Briscoe *v.* Bronaugh, 1 Tex., 340; Ables *v.* Donley, 8 Tex., 331.)

The issue raised by the motion for new trial was substantially involved in the suit, and there was not such sufficient diligence shown to have obtained the required testimony as would demand that the motion should have been granted.

In our opinion, the parties and issues before the court are not such as to involve the consideration of the respective rights of the creditors of the separate and community estates.

There being no apparent error in the judgment below, the same is affirmed.

AFFIRMED.