RICE et al. v. LIPSITZ et al.   (No. 941.)

(Court of Civil Appeals of Texas. El Paso. April 3, 1919.)

1. JUDGMENT ⊚═◦518 — COLLATERAL ATTACK —WHAT CONSTITUTES.

A suit to set aside a sale of community property by the survivor because of insufficiency of his bond is a collateral attack on the decree of the probate court which cannot be sustained.

2. JUDGMENT ⊚═◦518 — COLLATERAL ATTACK —WHAT CONSTITUTES.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3600, authorizing the survivor of a community to sell community property after qualifying for the best interest of the estate without control by the court, a suit to set aside a sale by a survivor because not for the best interest of the community is not a collateral attack on a probate court judgment.

3. HUSBAND AND WIFE ⊚═◦273(12)—COMMUNITY PROPERTY—SALE BY SURVIVOR.

In suit to set aside a sale of community property by the survivor, evidence *held* sufficient to take to the jury the issues whether the debts for which the sale was made were claims against the community estate, whether the sale was free from coercion, and whether it was with a view to the interest of the parties, so that a directed verdict for defendant was erroneous.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Suit by Lee Rice and others against Louis Lipsitz and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Penix & Miller, of Mineral Wells, F. Spencer Stubbs and J. B. & C. J. Stubbs, all of Galveston, and J. J. Eckford, of Dallas, for appellants.

Spence, Haven & Smithdeal, of Dallas, and W. P. Gibbs, of Gordon, for appellees.

HARPER, C. J. This suit was instituted by the children of Lois E. Rice, deceased wife of J. R. Rice, against said J. R. Rice and his second wife, Mrs. Kathlyn Rice, A. M. Barrett, trustee, in deed of trust, and Louis Lipsitz, trustee for J. R. Rice's creditors, to recover a half interest in 19 tracts of land, described; and for cause of action alleged: That the lands sued for were acquired with the community funds of J. R. Rice and Lois E. Rice. That certain of the property described was the business homestead and exempt. That the plaintiffs are the children and only children of the said J. R. Rice and Lois E. Rice. That said Lois E. Rice died intestate about March 22, 1909. That on March 2, 1911, pursuant to a petition filed, the county court of Palo Pinto county, Tex., appointed said J. R. Rice administrator of the community estate. That an inventory was filed and bond executed and approved in the sum of $20,000. That there was no list of debts inventoried or filed. That December 1, 1913, J. R. Rice executed a deed of trust to A. M. Barrett, trustee, to secure certain of his individual indebtedness. That if any community debts existed at that time they had been paid, or else were barred by the statute of limitations. That this deed of trust was executed without consideration, but to secure pre-existing debts of said J. R. Rice; therefore it did not create a valid lien upon aforesaid homestead, nor did it convey any lien upon their half interest in the other property described.

And further alleged: That April 5, 1915, said J. R. Rice for himself and as administrator, together with his then wife, Kathlyn Rice, and A. M. Barrett, trustee, in the above deed of trust, executed a certain instrument in writing to the defendant Louis Lipsitz, as trustee, for the creditors, whereby they undertook to convey all the property described to said Lipsitz for the purported consideration of $15,-000, but that in fact the real consideration therefor was the aforesaid pre-existing individual debts of said J. R. Rice. That at the time said last-named instrument was executed, the said Barrett, trustee, and said Lipsitz, trustee, and all and each of the beneficiaries named, knew that the property described therein was the community estate of said J. R. Rice and Lois E. Rice, at the time of the latter's death, and that one-half of it

belonged to plaintiffs. And further pleaded that the attempted qualification as surviving administrator was void because the sureties upon the bond filed were at the time insolvent.

Defendants answered by special and general exceptions, plea of not guilty, general denial, and for special answer pleaded: That the appointment and qualification of J. R. Rice as surviving community administrator were regular, and that by the order of the probate court he was authorized to dispose of the community property in accordance with law. That with full authority said J. R. Rice executed the instrument conveying the property in controversy, in fee simple, to said trustee, but in trust for the creditors of the said Rice for the actual consideration of $15,000. Therefore the plaintiffs have no right or title to the property, etc.

By amendment plaintiff alleges that by false and fraudulent misrepresentations, made by said Lipsitz and other creditors, to the effect that the entire property sued for could be subjected to his (J. R. Rice's) debts, and that in case of forced sale it would not bring as much as $15,000, and by the threat that the said property would be subjected to forced sale if the said instrument was not executed, said J. R. Rice was deceived into its execution, etc.

And, further, that the defendants knowing that said property was community property, and that one-half interest rested in the plaintiffs upon the death of their mother, they all conspired together to defraud them, and between themselves prepared the instrument sought to be canceled, etc.

A jury being impaneled to try the cause, but the court, after hearing the evidence, instructed a verdict for the defendants, upon which judgment was accordingly entered; from which this appeal.

Undisputed facts:

The lands in controversy were acquired with the community funds of J. R. Rice and Lois E. Rice, the father and mother of plaintiffs. One of the plaintiffs is a minor.

Lois E. Rice died intestate, March 22, 1909.

March 2, 1911, J. R. Rice qualified as administrator of the community estate by filing inventory and bond in the sum of $20,000. No list of the debts or liabilities of the estate was filed.

December 1, 1913, Rice executed a deed of trust to A. M. Barrett trustee, to secure all of his creditors, share and share alike, covering all of the 19 parcels of land in controversy, including the homestead, and all stock of merchandise, book accounts, and choses in action, etc.

There is no recital in this instrument that any of the debts secured were contracted prior to the death of the mother; no possession was given, the mercantile business being conducted as before. J. R. Rice was

married to his present wife, Kathlyn, April 26, 1911.

This instrument contains the usual power of sale in part or bulk, with provision that the proceeds of any sale be paid to the creditors pro rata. No sale was made by virtue of this instrument except as next indicated. On April 5, 1915, an instrument was executed which is designated "Deed Conveying Certain Lands in Palo Pinto and Other Counties in Texas," by J. R. Rice as surviving administrator and Kathlyn Rice, and A. M. Barrett, trustee, to Louis Lipsitz, as trustee, which contains the following recitals:

"Whereas, * * * on the 1st day of December, 1913, * * * J. R. Rice executed * * * deed of trust *. * * with power of sale * * * conveying in trust to Barrett, as trustee, the lands hereinafter described for the benefit of said Rice's creditors, the said trustee being authorized to sell the property and make disbursements of the proceeds equally without preference to said creditors; * * * and whereas, the real estate * * * has not been disposed of * * * and the creditors beneficiaries therein have now agreed with said Rice and with said trustee that same be properly conveyed to Louis Lipsitz as trustee for said creditors, at an agreed valuation. The amount whereof shall be credited pro rata upon the respective amounts of indebtedness held by said creditors against the said Rice, said lands when so conveyed to said Lipsitz, trustee, to be held, controlled, managed, and disposed of by him as he may think best for the interest of the creditors, with express authority to make proper sales and conveyances thereof, in bulk or in parcels, as to the said Lipsitz may seem best, the net proceeds of any such sales to be applied equally and without preference to the claims and debts of the said creditors, beneficiaries in said original trust deed: Now, therefore, know all men by these presents: That the said J. R. Rice, as administrator, etc., * * * joined by his present wife and also A. M. Barrett, trustee, in consideration of the premises and of the payment of the agreed sum of fifteen thousand dollars cash and its equivalent (such payment being evidenced by the credit to that amount secured by said original trust deed * * *) have granted, etc., * * * all of the following described lands: (Here follows the description of the lands in controversy.) Together with all and singular the rights, etc., * * * belonging to or in any wise appertaining. To have and to hold said lands * * * unto said Lipsitz, trustee, and unto his vendees, assigns and successors forever. * * * (Then follows the usual covenant of warranty.) This conveyance is made to the said Lipsitz, trustee, for the creditors who are beneficiaries in the deed of trust to A. M. Barrett, and is made with the consent and at their direction and for the consideration recited, and for their pro rata benefit."

On May 1, 1915, an instrument was executed which is designated, "Instrument Confirming Conveyance of Lands to Louis Lipsitz, by a Large Number of Persons, Copartnerships and Corporations," which in the body of the instrument are denominated "the creditors of the said J. R. Rice, who are beneficiaries in the original trust conferred upon Barrett, trustee."

The testimony bearing upon the questions at issue will be noted in the course of this opinion.

All the assignments of error and propositions assert that it was error for the court to instruct a verdict in that: (1) There is evidence sufficient to require a submission to the jury upon the questions of conspiracy to defraud the minor heirs; (2) whether or not the grantees in the instruments in fact held claims against the community estate the settlement of which was the consideration for the conveyance; (3) that the conveyance was made to settle individual debts; (4) that the grantees are not bona fide purchasers for value; (5) that if there were any of the parties grantees who held original community claims unpaid such debts were for such small amounts as to be an inadequate consideration for the conveyance.

[1-3] Appellee by counter proposition urges that this is a collateral attack upon the judgment of the probate court. As to appellants' proposition that the proceedings were void because the sureties upon Rice's bond were insolvent this is true and the proceedings will not be held void upon collateral attack for that reason. Jordan v. Imthurn, 51 Tex. 276. But there is no judgment of a probate court attack in this case for it is not a case of regular administration where the sale is made upon order of the probate court and thereafter approved but is an attempted sale by the survivor of the community over whose acts after qualifying the probate court has no control. But on the other hand it is settled in this state that the survivor of the community has the power to sell and dispose of the community estate "in such manner as may be for the best interest of the estate" whether he has qualified as administrator or not. Article 3600, Vernon's Sayles' Statutes of Texas; Morse v. Nibbs, 150 S. W. 766. So the question sought to be determined in this action is: Was this such a sale as under the facts divests the title of these heirs to their interests in these lands which vested in them upon the death of their mother subject only to the community debts? And the question to be determined upon this appeal is: Was there sufficient evidence adduced upon the trial upon any issue material to a recovery by plaintiffs, to require its submission to the jury? The real essence of the appellants' propositions enumerated above, when resolved to their ultimate analysis, is that this sale was not made for the interest of the estate, but to pay personal debts in no way connected with the community accounts; that the grantees knew these facts, and fraudulently induced Rice to qualify by threats of bankruptcy proceedings, and of judgments and forced sale.

Only one witness testified concerning the question indicated, J. R. Rice, and he reveals: That at the date of the death of the mother of the plaintiffs (1909), they were possessed of the land in controversy, a stock of merchandise valued at $13,191.28, accounts due $17,000, cotton $1,200, cash in bank $1,500—in all $33,000, outside of the lands, and with the indebtedness $13,182.06. That he, nearly two years afterwards, filed the application to qualify as survivor (1911), and in 1913 the deed of trust to Barrett, trustee, was executed by him, conveying all of the above-named property to secure the then creditors. Again, whilst the deed of Lipsitz recited that those who accepted the latter were the beneficiaries in the former, Rice testifies in a way to clearly show that but few of them were among the original creditors, and he does not positively testify that any one debt for which either of the instruments was executed were community debts or had been incurred for the benefit of the estate.

He testified that he had been paying on the debts all along, yet, when this last transfer was executed, he by his own confession, shows that he was owing nearly twice the amount owing at the death of his wife; and the recital in the instrument as to considerations is that it is to pay $15,000 of the then debts.

Again, his statements indicate that he was induced to qualify by the threats of some of these defendants, and the inference is that they all knew of the threats being made, and, knowing that their debts were not community debts, were aware that a sale without qualifying in the probate court as survivor might be void, whilst, if he qualified, would be valid.

The Supreme Court, in Matula v. Freytog, 101 Tex. 357, 107 S. W. 536, held that whether a sale is before or after qualifying had no determinative effect. And in Belt v. Cetti, 100 Tex. 96, 93 S. W. 1002, it is held that—

"The execution of the bond and return of the inventory * * * did not divest the title out of the children, but only provided for paying the debts of the community by a different method than that which is provided for ordinary administrations."

All the cases which hold sales to be valid recognize and assert that they are made in good faith, without fraud, and for the best interest of the estate. See Morse v. Nibbs, 150 S. W. 766, and cases there cited.

The evidence sufficiently indicates that this sale was for the sole purpose of paying the personal debts of Rice as to require the questions to be submitted to a jury: (1) Were the debts for which this transfer to Lipsitz was executed just claims against the community estate? Was the sale made in good faith; that is, free from coercion or undue influence, with a view to the interests of the parties? Therefore the court was in error in instructing a verdict.

Reversed and remanded.

