LIPSITZ v. RICE et al.    (No. 9383.)

(Court of Civil Appeals of Texas. Fort Worth.
April 16, 1921.)

1. Husband and wife ⬅273(9) — Community survivor may not use deceased wife's estate except to pay community debts.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 3598–3601, a husband, as community survivor, is not authorized to use his deceased wife's estate for the payment of any but community debts, but must manage the estate in good faith for its best interest.

2. Husband and wife ⬅273(10)—Husband's creditors who received community property and credited valuation on debts not purchasers for value without notice; "innocent purchaser."

Where no independent consideration was paid to a community survivor by his creditors for conveyance to them of property of the community estate, but his creditors merely credited on their accounts against him the 55 per cent. thereof represented by the agreed valuation of the lands conveyed to them, none of the creditors can be held to be purchasers for value without notice; for, to constitute an innocent purchaser, there must be a purchase without notice, actual or constructive, of the outstanding claims urged against the thing purchased, and there must have been payment of a valuable consideration.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Innocent Purchaser.]

3. Husband and wife ⬅273(12) — Evidence held to justify finding of fraud on part of grantor surviving husband and grantee creditors.

Evidence *held* sufficient to sustain jury's verdict that deeds by the surviving husband of a community conveying community lands to his creditors were procured by fraud or coercion of the creditors, grantees in the deed, to the injury of the rights of the minor children of the grantor husband and his deceased wife in the tracts of land conveyed, though no actual fraudulent intent inspired either the grantor husband or the grantee creditors; the husband and the creditors having attempted to use the community estate for the payment of separate debts of the husband.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Action by Lee Rice and others against Louis Lipsitz. From judgment for plaintiffs, defendant appeals. Affirmed.

Spence, Haven & Smithdeal, of Dallas, for appellant.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

James B. & Charles J. Stubbs, and F. Spencer Stubbs, all of Galveston, Penix, Miller, Perkins & Dean, of Mineral Wells, and J. J. Eckford, of Dallas, for appellees.

BUCK, J. This is the second appeal of this case. For a statement of the pleadings and the evidence on the former appeal, see 211 S. W. 293. The pleadings and evidence are largely the same on this appeal.

Plaintiffs recovered below a one-half undivided interest in 19 tracts of land alleged and admitted to be of the community estate of J. R. Rice and his deceased wife, Lois E. Rice, the mother of plaintiffs. From this judgment Louis Lipsitz has appealed.

There are several main questions in this appeal, which must be decided by us in this consideration.

(1) Has a community survivor, who has qualified as such under the statute, the right to sell, incumber, or otherwise dispose of the community estate, without reference as to whether such transactions are for the benefit of the community estate or not?

(2) Can the heirs of the deceased spouse recover their pro rata of such estate from the survivor, or from one to whom it has been conveyed under circumstances that woud not make him a purchaser for value without notice and where fraud, either actual or legal, has been shown in the management of the estate?

(3) Does the evidence in this case support the verdict of the jury that such fraud existed?

Article 3598, V. S. Tex. Civ. Stats., provides:

"The surviving husband shall, at the same time he returns the inventory, appraisement and list of claims, present to the court his bond with two or more good and sufficient sureties, payable to and to be approved by the county judge, in a sum equal to the whole of the value of such community estate as shown by the appraisement, conditioned that he will faithfully administer such community estate, and pay over one-half of the surplus thereof after the payment of the debts with which the whole of such property is properly chargeable, to such person or persons as shall be entitled to receive the same."

Article 3599 reads as follows:

"When any such inventory, appraisement, list of claims and bond are returned to the county judge, he shall, either in term time or in vacation, examine the same and approve or disapprove them by an order to that effect entered upon the minutes of the court, and, when approved, the same shall be recorded upon the minutes of the court, and the order approving the same shall also authorize such survivor to control, manage, and dispose of such community property in accordance with the provisions of this chapter."

Article 3600 is as follows:

"When the order mentioned in the preceding article has been entered, such survivor, without any further action in the county court shall have the right to control, manage and dispose of such community property, real or personal, in such manner as may seem best for the interest of the estate, and of suing and being sued with regard to the same, in the same manner as during the lifetime of the deceased; and a certified copy of the order of the court mentioned in the preceding article shall be evidence of the qualification and right of such survivor."

Article 3601 provides that the survivor shall keep a fair and full account of all community debts and expenses paid by him, and of the disposition made of such community property, and upon final partition of said estate shall account to the legal heirs of the deceased for their interest in such estate, etc.

[1] Therefore it is evident that the statutes do not contemplate and authorize the community survivor to use his deceased wife's estate for the payment of any but community debts, but that he must manage said estate in good faith for the best interest of such estate.

Mrs. Lois Rice died March 22, 1909, leaving surviving her her husband and three children, who are plaintiffs in this suit. J. R. Rice qualified as community survivor on March 24, 1911. He gave a community survivor bond, with B. B. Oden, Thomas Dyer, and A. M. Barrett as sureties, in the sum of $20,000. The evidence sustains the conclusion that these sureties did not have property subject to execution of the amount of the bond at the time it was made, nor at any time thereafter, and that at the time of the trial the bond could not be made out of either the principal or the sureties. The evidence shows: That one of the sureties failed in business about 1911, or perhaps 1912, and has not been financially solvent since. That another one of the sureties did not own any property subject to execution in 1911, and that the third surety owned nothing but his homestead. That at the time the bond was made the plaintiff knew of the financial condition of the sureties, that they were not worth the amount of the bond, but considered the giving of the bond as a mere matter of formality. The evidence further shows: That the community estate at the time of the filing of the inventory and appraisement was valued at $20,800, consisting of lands in Palo Pinto county, Tarrant county, Eastland county, the home place at Gordon, and the warehouse and storehouse there, Mr. Rice being engaged in the general merchandise business at Gordon. It really was worth probably a good deal more. For instance, the merchandise on hand was listed in the inventory at $4,000, while Mr. Rice testified that on January 1, 1909, it was worth over $13,000. The notes and accounts were listed at $6,000, while their face value on January

1, 1909, was something over $17,500. The only debts due by the community estate at the time of the death of Mrs. Rice amounted to $3,870. That the financial condition of J. R. Rice was worse in 1911, when he qualified as community survivor, than it was at the time of the death of his wife, and that in 1915 he was owing some $25,000 to various creditors, who were pressing him for settlement. That in 1913 he had a meeting with creditors in Fort Worth, and agreed to give a trust deed to A. M. Barrett, as trustee, for the protection of his creditors. That he made this conveyance on December 1, 1913, conveying to Barrett, as trustee for his creditors, the 19 tracts of land described in plaintiffs' petition, also all of the grantor's personal property, notes, and accounts, and also his stock of merchandise, authorizing the said trustee to sell so much of said property as might be salable for the best price reasonably obtainable therefor, at public or private sale, as the trustee might deem most advantageous, and apply the net proceeds of such sales to the payment of the claims of all of Rice's creditors. That in April, 1915, his creditors insisted that, as they had not been paid anything by Barrett since he had become trustee, he convey to Louis Lipsitz the 19 tracts of land in controversy, at an agreed valuation of $15,000, and that he be allowed this amount to apply to the payment of his debts, his creditors receiving 53 per cent. of their debts. Louis Lipsitz held this property until April 14, 1917, when this suit was filed. Mr. Rice thought that he had the right to use all of the community estate for the payment of his personal debts. He testified that by this last-mentioned arrangement he did pay 53 per cent. of his debts and also was able to continue his business and support his second wife and minor children. He testified that he did not have any intention of defrauding his children. On one of the tracts conveyed to Lipsitz there was a vendor's lien of $448.10, which Lipsitz paid, and in the judgment rendered this amount, with interest, was credited to Lipsitz, and constituted a lien on the nineteen tracts mentioned.

In Morse v. Nibbs, 150 S. W. 766, 767, it is said:

"It is now well settled in this state that the survivor of a marital relation has authority, without administration on the estate of the deceased spouse in any of the statutory modes, to sell community property to pay community debts. The purchaser of community property under such circumstances is not bound to see that the purchase money is applied to the payment of the community debts. It is essential, however, to the protection of the purchaser that the consideration paid be not grossly inadequate, that there be no collusion or fraud to which he is a party, and that he have no knowledge of any intention of the survivor to misapply the proceeds. Sanger v. Heirs, of Moody, 60 Tex. 96; Walker v. Abercrombie, 61 Tex. 69; Moody v. Butler, 63 Tex. 210; Ashe v. Yungst, 65 Tex. 631."

[2] It is admitted in the instant case that the creditors knew at the time of the deed to Lipsitz that the land conveyed was part of the community estate of J. R. Rice and his deceased wife, and that the plaintiffs were the heirs of their mother, Mrs. Lois E. Rice. Of course, J. R. Rice knew these facts. It is further admitted that no independent consideration was paid to J. R. Rice for the conveyance, but that his creditors merely credited on their accounts against him the 53 per cent. thereof represented by the agreed valuation of the lands conveyed. Hence neither Lipsitz nor the other creditors can be held to be purchasers for value without notice.

In Hales v. Peters, 162 S. W. 386, 389, the following is said:

"Upon the death of Mrs. Lindsey a one-half interest in the community property of herself and her husband, A. Lindsey, vested absolutely in their children, subject, of course, to the payment of community debts. Such interest did not cease to exist by the qualification of A. Lindsey as survivor, and he did not thereby become the unqualified owner of the same. By qualifying as survivor, A. Lindsey acquired the right to manage and control the community estate; 'but the title of the children was not thereby divested.' Faris v. Simpson, 30 Tex. Civ. App. 103, 69 S. W. 1029. As held in Faris v. Simpson, supra, after the lapse of one year they were entitled, under the statutes, to have the estate partitioned and distributed, and this could not be done if the property belonged to their father, A. Lindsey. If Lindsey, by qualifying as survivor, became the owner, in his own right, of all the community property of himself and deceased wife, then as a matter of course there could be no community property to be distributed between him and his children."

In Faris v. Simpson, 30 Tex. Civ. App. 103, 104, 69 S. W. 1029, 1030, writ of error denied, the following is said:

"Appellants contend that when Mrs. Simpson qualified as survivor she became the owner in her own right of all the community property; that the children thereupon ceased to have any interest whatever in the property belonging to the estate, and became creditors of their mother to the extent of the value of their interests in the estate, their claims against her being secured by the survivorship bond. The contention is not tenable. On the death of Simpson, one-half of the community property belonging to himself and wife descended to and vested in his children. Rev. St. art. 1696. As there were no debts, the title of the children was subject only to the right of the wife to administer the estate under the statute. By qualifying as survivor she acquired the right to manage and control the estate, but the title of the children was not thereby devested. * * * The right of Mrs. Simpson to manage,

control, and dispose of the property belonging to the estate was a right she possessed as surviving partner and community administrator, and not as unqualified owner."

One who purchases at a voluntary sale from his debtor, and pays no money, but credits the amount of the consideration on a pre-existing debt, is not a bona fide purchaser for value. Overstreet v. Manning, 67 Tex. 657, 4 S. W. 248. See, also, Moody v. Martin, 117 S. W. 1015; McKamey v. Thorp, 61 Tex. 648. One who claims to be a purchaser in good faith must prove that claim, and, if there be any fact or circumstance tending to show that he is not a purchaser in good faith, the question is one of fact for the jury, and cannot be assumed by the court. To constitute an innocent purchaser, there must be a purchase without notice, actual or constructive, of the outstanding claim urged against the thing purchased, and there must have been the payment of a valuable consideration. Johnson v. Newman, 43 Tex. 628; Hume v. Ware, 87 Tex. 380, 28 S. W. 935; Nichols v. Crosby, 87 Tex. 443, 29 S. W. 380; Downs v. Stevenson, 56 Tex. Civ. App. 211, 119 S. W. 315.

[3] The jury found that the deed executed by J. R. Rice to Louis Lipsitz on April 5, 1915, was not executed in good faith by Rice, nor for the best interest of plaintiffs in the community estate, nor was the instrument executed by Rice to Barrett made in good faith for the best interest of the plaintiff. The jury further found that the execution of the instruments by Rice to Barrett and to Lipsitz were procured by fraud or coercion of the beneficiaries in said deed to the injury of the rights of plaintiffs in the tracts of land described in said conveyances; that the beneficiaries in these two instruments induced, by undue influence or fraud, J. R. Rice to execute the same; that the beneficiaries in said two instruments conspired with J. R. Rice to defraud the plaintiffs of their interest in the tracts of land described for the purpose of benefiting themselves and said J. R. Rice.

These findings, we think, are supported by the evidence. While it may be admitted that no actual fraudulent intent inspired either J. R. Rice or the beneficiaries in the execution and delivery of these two instruments, yet, in so doing, with full knowledge of the facts, they were attempting to use the community estate, in which these plaintiffs had a half interest, for the payment of separate debts of J. R. Rice, and we think that this is sufficient to show legal fraud. We see no reason for disturbing the judgment rendered in the trial court, and, for the reasons given, the judgment is affirmed.

Affirmed.