## McGRAW et al. v. BROACH.

### No. 676.

Court of Civil Appeals of Texas. Eastland.

March 21, 1930.

Rehearing Denied April 18, 1930.

John Doyle, of McKinney, and D. J. Brookreson, of Benjamin, for appellants.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

HICKMAN, C. J.

Mrs. Agnes L. McGraw, former wife of T. W. McGraw, died intestate in 1923, leaving surviving her nine children, all of whom were minors except two. These children were also the children of T. W. McGraw. Thereafter T. W. McGraw duly qualified as community survivor. About one year later McGraw married again. The marital relation between him and his second wife has existed continuously from the date of their marriage to the present time. In the spring of 1928 the firm of McGraw Bros., a partnership composed of T. W. McGraw and J. P. McGraw, conducting a business of buying and selling cotton, became indebted to the First National Bank of Munday, Tex. This indebtedness accrued as the result of business dealings between the partnership and the bank, covering a period beginning in the fall of 1926. It is unnecessary to detail the relations between the bank and the partnership further than to state that the bank advanced money with which the partnership bought cotton. On April 7, 1928, McGraw Bros., acting through T. W. McGraw, executed what is known as a trade acceptance for the sum of $6,788.90. This trade acceptance was in the general nature of a draft drawn by McGraw Bros. upon Fred Broach, payable to the order of the said bank ninety days after its date, providing for interest and attorneys' fees. The drawee, Fred Broach, accepted the draft and later paid same. Broach was an accommodation acceptor, and the instant suit was instituted by him, based upon the alleged liability of McGraw Bros. on account of his having paid this acceptance.

In his suit the appellee named as defendants T. W. McGraw, J. P. McGraw, and T. W. McGraw, administrator of the community estate of himself and his deceased wife, Agnes L. McGraw. As a basis of liability on the part of T. W. McGraw, as administrator, it was alleged in substance, that, long prior to the death of Agnes L. McGraw, he was engaged in the purchase and sale of cotton at Munday and elsewhere, and that, after the death of his said wife, Agnes L. McGraw, he continued said business for himself and for said community estate, conducting said business under the firm name of McGraw Bros., which was alleged to be a partnership composed of T. W. McGraw, J. P. McGraw, and T. W. McGraw, as community survivor. It was alleged that the business of the partnership of McGraw Bros. was conducted for the benefit of the community estate of T. W. McGraw and his first wife, that, had there been any profits accruing, same would have belonged to such community estate, and that the losses sustained were to be borne by said estate.

After the indebtedness sued on accrued, but several months prior to the institution of this suit, T. W. McGraw conveyed certain lands to certain of his children. The consideration recited in these various deeds, in addition to the assumption by grantees of certain indebtedness, was the final payment, satisfaction, and discharge of all that McGraw owed the grantees named as their part of, and interest in and to the estate of, their deceased mother. These deeds were promptly placed of record.

Upon the institution of this suit, and after the above-mentioned deeds had been placed of record, appellee, Broach, caused writs of attachment to be issued against T. W. McGraw, which writs were levied on an undivided one-half interest in and to the lands conveyed by these several deeds. The petition alleged that, by virtue of the allegations, appellee was entitled to an equitable lien upon all of the lands of the community estate of T. W. McGraw and his deceased wife, and prayed for the establishment and foreclosure of such lien. It also prayed for a foreclosure of the attachment lien. The children of T. W. and Agnes L. McGraw intervened in the suit, the adults by themselves and the minors by next friend, setting up their title to the lands conveyed to them by their father, and denying that the appellee had any lien, equitable or otherwise, on said land.

The Dallas Cotton Factors' Corporation filed an interpleader, and deposited in the registry of the court $2,933.87 realized by it from sales of cotton handled for McGraw Bros., the money to purchase which was furnished by the First National Bank of Munday. Mrs. Maye Korioth, one of the children of T. W. McGraw who intervened, set up a claim to this money by virtue of an alleged assignment thereof to her by her father. In a supplemental petition, the filing of which was not objected to as being out of due order, the appellee, Broach, alleged that the deeds executed by McGraw to his children were made to hinder, delay, and defraud his creditors, and were therefore void. The same allegations were made as to the alleged transfer by McGraw to Mrs. Korioth of the funds in the hands of the Dallas Cotton Factors' Corporation. Prayer was made in the supplemental petition for the cancellation of all of such deeds, as well as such transfer, and for judgment as prayed for in his first amended original petition.

The case was submitted on three special issues, by the answers to which the jury determined: (1) That T. W. McGraw, since the death of his wife, Agnes L. McGraw, had continuously exercised sole management and control of the property belonging to the estate of himself and his said deceased wife; (2) that the debt sued upon by the plaintiff in this case was incurred by T. W. McGraw in the continuation of his management of the community property of himself and his deceased wife; and (3) that the deeds executed by T. W. McGraw to his children were made with intent to hinder, delay, and defraud his creditors.

Upon these findings the court rendered judgment in favor of appellee for the sum of $8,376.44 against J. P. McGraw and against T. W. McGraw, individually and as community administrator of the estate of himself and his deceased wife, Agnes L. McGraw, and against Dallas Cotton Factors' Corporation for the amount deposited by it in court, same to be applied as a credit on the judgment rendered against the other defendants. The court decreed that the indebtedness was incurred by T. W. McGraw as community survivor, and that appellee was entitled to an equitable lien against the land conveyed by him to his children, which equitable lien and also the attachment lien were foreclosed as against all of the defendants. The judgment further canceled the various deeds executed by T. W. McGraw to his children, and adjudged that appellee's lien was superior to any right of interveners in and to any of said land, and that a purchaser under such foreclosure should have title to said lands, free of any claims of T. W. McGraw, as community administrator, and of his children. Neither J. P. McGraw nor T. W. McGraw, individually, made any

contest in the court below, nor have they appealed to this court. The judgment as to them is therefore not before us, and will not be disturbed. This appeal is prosecuted by T. W. McGraw, as administrator of the community estate of himself and his deceased wife, Agnes L. McGraw, and by their children, who were interveners below.

■■ One of the controlling questions of law to be determined by this appeal is whether, under the facts, the children's one-half of the community estate of T. W. McGraw and his deceased wife, Agnes L. McGraw, is liable for the payment of a debt incurred by the partnership of McGraw Bros. many years after the death of Mrs. Agnes L. McGraw, and after T. W. McGraw had become a member of another connubial partnership. Appellee insists that this question is answered by the jury in its determination that the debt sued on was incurred by T. W. McGraw in the continuation of his management of the community estate. Appellants present that there is no evidence supporting such finding, and in this view we concur. The general nature of the evidence relied upon by appellee, which he claims supports this finding of the jury and the judgment of the court, is as follows: For several years prior to 1926, McGraw did not do any business with the First National Bank of Munday. During the fall of that year McGraw Bros. began the carrying of their cotton account in this bank. The bank called on T. W. McGraw for a financial statement, and in his statement he listed all the lands belonging to the community estate of himself and his deceased wife. The bank officials knew Mrs. Agnes L. McGraw was dead, that McGraw had been appointed community survivor, and that he had remarried. McGraw told the president of the bank that he handled everything just like he did before his wife died; he did not carry any account as survivor, but undertook to "keep in his head" the condition of the community estate. McGraw carried his bank account in his own individual name, both prior and subsequent to the death of his first wife. On cross-examination McGraw testified:

"I have been handling the estate as best I could for myself and the children, but don't seem to have made any success. I always tried to do the best I could. Yes, I testified on the plea of privilege that I handled the estate the best I could or tried to, and in handling the estate if there was anything made I expected the children to get their part of the profits, but for the last four years it has been a loss all the way. I answer your question on that plea of privilege if there was any profit made I expected the children to have half of it and I would be entitled to half. I managed the estate the best I knew how. * * * Yes, I stated that I managed the estate for the

benefit of myself and the children, but for the last five years I have not made a cent,. looked like everything I touched lost."

Article 3669, R. S. 1925, provides that a community survivor shall have the right to control, manage, and dispose of the community property as may seem for tne best interest of the estate. Article 3661 provides that the community property shall be liable for all the debts contracted during marriage. The power to manage, control, and dispose of the community property necessarily carries with it the power to create such indebtedness against it as is incidental to the management, control, and disposition thereof. But a debt incurred by a partnership formed after the death of his wife, of which the survivor is a member, the assets of which partnership consist of borrowed money, could not be an indebtedness incident to, or in continuation of, the management and control of the community estate. As a matter of law, had this cotton business resulted in profits instead of losses, such profits would not have belonged to the community estate of T. W. and Agnes L. McGraw, but to J. P. McGraw and the second community of T. W. McGraw. To illustrate: Suppose profits had accumulated to the partnership and T. W. McGraw had died, leaving debts incurred during his second marriage. His one-half of these profits would have belonged to, and would have been subject to, the debts of the second community, and not to the debts of the first community. J. P. McGraw's one-half interest would have belonged to him, and not to this community. Upon qualifying as survivor, T. W. McGraw had the powers given him by the statutes to manage, control, and dispose of this estate, but he did not have the power to divest his earnings during his second marriage of their character as property of the second community estate and vest same in the first community estate. For the same reason, he did not have the power to incur an indebtedness against the second community estate and then transfer same to the first community estate. For greater reasons the creditors of his second community have not the power to charge the first community with an indebtedness incurred by the second community, without the consent of the survivor. The children's interest in this estate would not have been liable for the payment of this debt, even if the father had not remarried, and even if it had been incurred by him individually and not as a member of a partnership. In Faris v. Simpson, 30 Tex. Civ. App. 103, 69 S. W. 1029, 1030 (error denied), this language occurs:

"Another contention of appellants is that the debt to Faris was a charge against the entire community estate, and was entitled to priority of payment out of the estate over the claims of the children. Neither is this contention well taken. The debts to which such preference is given are those created during the connubial partnership. Rev. St. arts. 1696, 2229, 2230. The debts incurred by the survivor after qualifying as administrator have no such standing. One who credits a community administrator does so voluntarily, and does not thereby acquire an equitable lien against the community property superior to the rights and title of the children. We are not called on to determine the question whether the creditor would be entitled to such preference if the debt was incurred by the survivor, acting in the capacity of administrator, for the benefit of the estate, as no such case is made by the record herein. This particular debt was made for the personal advantage of Mrs. Simpson, and was amply secured. A debt so created and so secured cannot be urged in avoidance of a just and fair settlement made with the children."

See, also, Rice v. Lipsitz (Tex. Civ. App.) 211 S. W. 293; Id. (Civ. App.) 233 S. W. 594; Brown v. Adams (Tex. Civ. App.) 55 S. W. 761; Hales v. Peters (Tex. Civ. App.) 162 S. W. 386, 389; Belt v. Cetti, 100 Tex. 92, 93 S. W. 1000; Clark v. First National Bank (Tex. Com. App.) 210 S. W. 677.

Appellee relies upon such cases as Jordan v. Imthurn, 51 Tex. 276, and Coleman v. Coleman (Tex. Civ. App.) 293 S. W. 695, as authority for his contention that the community estate of T. W. and Agnes L. McGraw was liable for the payment of this claim. We think the facts of those cases clearly distinguish them from ine instant case. It was shown therein that the survivor had voluntarily executed a lien upon the community property to secure a debt incurred by him after his appointment as survivor, and it was held that the power given him by the statute to dispose of the community estate necessarily carried with it the lesser power to incumber same. We have not a case where the survivor executed a deed of trust, but one in which an involuntary lien is sought to be established and foreclosed to secure the debt of a partnership.

We also sustain appellant's contention that there was not sufficient evidence to support the finding that the deeds executed by T. W. McGraw to his children were made to hinder, delay, and defraud his creditors. A large part of the community estate of T. W. and Agnes L. McGraw had been dissipated. There is no positive evidence that the lands deeded by McGraw to his children exceeded in value the amount they would be entitled to in the settlement of this estate. McGraw was under bond to account to these children for their one-half interest in the community. He was also indebted to one of the children for borrowed money. The law is well settled that a conveyance by a debtor to one of his creditors in payment of an antecedent bona fide debt

will be sustained, if the debt is not materially less than the fair and reasonable value of the property. Brasher v. Jamison, 75 Tex. 139, 12 S. W. 809; Owens v. Clark, 78 Tex. 547, 15 S. W. 101; Jackson v. Downs (Tex. Civ. App.) 149 S. W. 286; 27 C. J. p. 534 et seq.

There is not sufficient evidence that this property was not conveyed for the purpose of a final settlement, as between the father and his children, or that the property conveyed was greater in value than the claims of these children. Strictly speaking, the relation of a community survivor to his children is not that of debtor and creditor, but the relation in this instance is analogous thereto. It is therefore our conclusion that this finding of the jury is not supported by the record. This question was not fully developed upon the trial below, and should be retried. If, upon another trial, the evidence warrants the cancellation of any or all of these deeds, then McGraw's one-half interest in this land will be subject to execution to satisfy a judgment against him.

We think the evidence supports the judgment in favor of appellee as against the Dallas Cotton Factors' Corporation for the amount of money tendered by it, and no purpose would be served by a discussion of this phase of the case. There are other questions presented, but we regard the questions above discussed as controlling.

It is therefore our order that the judgment of the trial court, in so far as it denies Mrs. Korioth and awards appellee a recovery against Dallas Cotton Factors' Corporation, be affirmed; that said judgment, in so far as it awards personal judgment against T. W. and J. P. McGraw individually, be not disturbed; that in all other respects the judgment be reversed and rendered, except as to that phase of the case involving the cancellation of the deeds from McGraw to his children, as to which alone the judgment of the trial court is reversed and remanded.

Affirmed in part, reversed and rendered in part, and reversed and remanded in part.